(Slip Opinion) OCTOBER TERM, 2017 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CLASS *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 16–424.  Argued October 4, 2017—Decided February 21, 2018

A federal grand jury indicted petitioner, Rodney Class, for possessing firearms in his locked jeep, which was parked on the grounds of the United States Capitol in Washington, D. C.  See 40 U. S. C. §5104(e)(1) ("An individual . . . may not carry . . . on the Grounds or in any of the Capitol Buildings a firearm").  Appearing *pro se*, Class asked the District Court to dismiss the indictment.  He alleged that the statute, §5104(e), violates the Second Amendment and the Due Process Clause.  After the District Court dismissed both claims, Class pleaded guilty to "Possession of a Firearm on U. S. Capitol Grounds, in violation of 40 U. S. C. §5104(e)."  App. 30.  A written plea agreement set forth the terms of Class' guilty plea, including several categories of rights that he agreed to waive.  The agreement said nothing about the right to challenge on direct appeal the constitutionality of the statute of conviction.  After conducting a hearing pursuant to Rule 11(b) of the Federal Rules of Criminal Procedure, the District Court accepted Class' guilty plea and sentenced him.  Soon thereafter, Class sought to raise his constitutional claims on direct appeal. The Court of Appeals held that Class could not do so because, by pleading guilty, he had waived his constitutional claims.

*Held*: A guilty plea, by itself, does not bar a federal criminal defendant from challenging the constitutionality of his statute of conviction on direct appeal. Pp. 3–11.

(a) This holding flows directly from this Court's prior decisions. Fifty years ago, in *Haynes* v. *United States*, the Court addressed a similar claim challenging the constitutionality of a criminal statute. Justice Harlan's opinion for the Court stated that the defendant's "plea of guilty did not, of course, waive his previous [constitutional]

claim." 390 U. S. 85, 87, n. 2. That clear statement reflects an understanding of the nature of guilty pleas that stretches, in broad outline, nearly 150 years. Subsequent decisions have elaborated upon it. In *Blackledge* v. *Perry*, 417 U. S. 21, the Court recognized that a guilty plea bars some "'antecedent constitutional violations,'" related to events (such as grand jury proceedings) that "'occu[r] prior to the entry of the guilty plea.'" *Id.*, at 30 (quoting *Tollett* v. *Henderson*, 411 U. S. 258, 266–267). However, where the claim implicates "the very power of the State" to prosecute the defendant, a guilty plea cannot by itself bar it. 417 U. S., at 30. Likewise, in *Menna* v. *New York*, 423 U. S. 61, the Court held that because the defendant's claim was that "the State may not convict [him] no matter how validly his factual guilt is established," his "guilty plea, therefore, [did] not bar the claim." *Id.,* at 63, n. 2. In more recent years, the Court has reaffirmed the *Menna-Blackledge* doctrine's basic teaching that "'a plea of guilty to a charge does not waive a claim that—judged on its face— the charge is one which the State may not constitutionally prosecute.'" *United States* v. *Broce*, 488 U. S. 563, 575 (quoting *Menna*, *supra*, at 63, n. 2). Pp. 3–7.

(b) In this case, Class neither expressly nor implicitly waived his constitutional claims by pleading guilty. As this Court understands them, the claims at issue here do not contradict the terms of the indictment or the written plea agreement and they can be resolved "on the basis of the existing record." *Broce*, *supra,* at 575. Class challenges the Government's power to criminalize his (admitted) conduct and thereby calls into question the Government's power to "'constitutionally prosecute'" him. *Ibid.* (quoting *Menna*, *supra*, at 61–62, n. 2). A guilty plea does not bar a direct appeal in these circumstances. Pp. 7–8.

(c) Federal Rule of Criminal Procedure 11(a)(2), which governs "conditional" guilty pleas, cannot resolve this case. By its own terms, the Rule does not say whether it sets forth the exclusive procedure for a defendant to preserve a constitutional claim following a guilty plea. And the Rule's drafters acknowledged that the "Supreme Court has held that certain kinds of constitutional objections may be raised after a plea of guilty" and specifically stated that Rule 11(a)(2) "has no application" to the "kinds of constitutional objections" that may be raised under the "*Menna-Blackledge* doctrine." Advisory Committee's Notes on 1983 Amendments to Fed. Rule Crim. Proc. 11, 18 U. S. C. App., p. 912. Because the applicability of the *Menna-Blackledge* doctrine is at issue here, Rule 11(a)(2) cannot resolve this case. Pp. 8– 10.

Reversed and remanded.

Syllabus

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, SOTOMAYOR, KAGAN, and GORSUCH, JJ., joined. ALITO, J., filed a dissenting opinion, in which KENNEDY and THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 16–424

RODNEY CLASS, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[February 21, 2018]

JUSTICE BREYER delivered the opinion of the Court.

Does a guilty plea bar a criminal defendant from later appealing his conviction on the ground that the statute of conviction violates the Constitution? In our view, a guilty plea by itself does not bar that appeal.

I

In September 2013, a federal grand jury indicted petitioner, Rodney Class, for possessing firearms in his locked jeep, which was parked in a lot on the grounds of the United States Capitol in Washington, D. C. See 40 U. S. C. §5104(e)(1) ("An individual . . . may not carry . . . on the Grounds or in any of the Capitol Buildings a firearm"). Soon thereafter, Class, appearing *pro se*, asked the Federal District Court for the District of Columbia to dismiss the indictment. As relevant here, Class alleged that the statute, §5104(e), violates the Second Amendment. App. in No. 15–3015 (CADC), pp. 32–33. He also raised a due process claim, arguing that he was denied fair notice that weapons were banned in the parking lot. *Id.*, at 39. Following a hearing, the District Court denied both claims. App. to Pet. for Cert. 9a.

Several months later, Class pleaded guilty to "Posses-

sion of a Firearm on U. S. Capitol Grounds, in violation of 40 U. S. C. §5104(e)." App. 30. The Government agreed to drop related charges. *Id.*, at 31.

A written plea agreement set forth the terms of Class' guilty plea, including several categories of rights that he expressly agreed to waive. Those express waivers included: (1) all defenses based upon the statute of limitations; (2) several specified trial rights; (3) the right to appeal a sentence at or below the judicially determined, maximum sentencing guideline range; (4) most collateral attacks on the conviction and sentence; and (5) various rights to request or receive information concerning the investigation and prosecution of his criminal case. *Id.*, at 38–42. At the same time, the plea agreement expressly enumerated categories of claims that Class could raise on appeal, including claims based upon (1) newly discovered evidence; (2) ineffective assistance of counsel; and (3) certain statutes providing for sentence reductions. *Id.,* at 41. Finally, the plea agreement stated under the heading "Complete Agreement":

> "No agreements, promises, understandings, or representations have been made by the parties or their counsel other than those contained in writing herein, nor will any such agreements . . . be made unless committed to writing and signed . . . ." *Id.,* at 45.

The agreement said nothing about the right to raise on direct appeal a claim that the statute of conviction was unconstitutional.

The District Court held a plea hearing during which it reviewed the terms of the plea agreement (with Class present and under oath) to ensure the validity of the plea. See Fed. Rule Crim. Proc. 11(b); *United States* v. *Ruiz*, 536 U. S. 622, 629 (2002) (defendant's guilty plea must be "'voluntary'" and "related waivers" must be made "'knowing[ly], intelligent[ly], [and] with sufficient awareness of

the relevant circumstances and likely consequences'"). After providing Class with the required information and warnings, the District Court accepted his guilty plea. Class was sentenced to 24 days imprisonment followed by 12 months of supervised release.

Several days later, Class appealed his conviction to the Court of Appeals for the District of Columbia Circuit. Class was appointed an *amicus* to aid him in presenting his arguments. He repeated his constitutional claims, namely, that the statute violates the Second Amendment and the Due Process Clause because it fails to give fair notice of which areas fall within the Capitol Grounds where firearms are banned. The Court of Appeals held that Class could not raise his constitutional claims because, by pleading guilty, he had waived them. App. to Pet. for Cert. 1a–5a. Class filed a petition for certiorari in this Court asking us to decide whether in pleading guilty a criminal defendant inherently waives the right to challenge the constitutionality of his statute of conviction. We agreed to do so.

## II

The question is whether a guilty plea by itself bars a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal. We hold that it does not. Class did not relinquish his right to appeal the District Court's constitutional determinations simply by pleading guilty. As we shall explain, this holding flows directly from this Court's prior decisions.

Fifty years ago this Court directly addressed a similar claim (a claim that the statute of conviction was unconstitutional). And the Court stated that a defendant's "plea of guilty did not . . . waive his previous [constitutional] claim." *Haynes* v. *United States*, 390 U. S. 85, 87, n. 2 (1968). Though Justice Harlan's opinion for the Court in *Haynes* offered little explanation for this statement, sub-

sequent decisions offered a rationale that applies here.

In *Blackledge* v. *Perry,* 417 U. S. 21 (1974), North Caro-
lina indicted and convicted Jimmy Seth Perry on a mis-
demeanor assault charge. When Perry exercised his right
under a North Carolina statute to a *de novo* trial in a
higher court, the State reindicted him, but this time the
State charged a felony, which carried a heavier penalty,
for the same conduct. Perry pleaded guilty. He then
sought habeas relief on the grounds that the reindictment
amounted to an unconstitutional vindictive prosecution.
The State argued that Perry's guilty plea barred him from
raising his constitutional challenge. But this Court held
that it did not.

The Court noted that a guilty plea bars appeal of many
claims, including some "'antecedent constitutional viola-
tions'" related to events (say, grand jury proceedings) that
had "'occurred prior to the entry of the guilty plea.'" *Id.*,
at 30 (quoting *Tollett* v. *Henderson*, 411 U. S. 258, 266–
267 (1973)). While *Tollett* claims were "of constitutional
dimension," the Court explained that "the nature of the
underlying constitutional infirmity is markedly different"
from a claim of vindictive prosecution, which implicates
"the very power of the State" to prosecute the defendant.
*Blackledge*, 417 U. S., at 30. Accordingly, the Court wrote
that "the right" Perry "asserts and that we today accept is
the right not to be haled into court at all upon the felony
charge" since "[t]he very initiation of the proceedings"
against Perry "operated to deprive him due process of
law." *Id.*, at 30–31.

A year and a half later, in *Menna* v. *New York,* 423 U. S.
61 (1975) (*per curiam*), this Court repeated what it had
said and held in *Blackledge*. After Menna served a 30-day
jail term for refusing to testify before the grand jury on
November 7, 1968, the State of New York charged him
once again for (what Menna argued was) the same crime.
Menna pleaded guilty, but subsequently appealed arguing

that the new charge violated the Double Jeopardy Clause. U. S. Const., Amdt. 5. The lower courts held that Menna's constitutional claim had been "waived" by his guilty plea.

This Court reversed. Citing *Blackledge*, *supra*, at 30, the Court held that "a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute." *Menna*, 423 U. S., at 63, and n. 2. Menna's claim amounted to a claim that "the State may not convict" him "no matter how validly his factual guilt is established." *Ibid.* Menna's "guilty plea, therefore, [did] not bar the claim." *Ibid.*

These holdings reflect an understanding of the nature of guilty pleas which, in broad outline, stretches back nearly 150 years. In 1869 Justice Ames wrote for the Supreme Judicial Court of Massachusetts:

> "The plea of guilty is, of course, a confession of all the facts charged in the indictment, and also of the evil intent imputed to the defendant. It is a waiver also of all merely technical and formal objections of which the defendant could have availed himself by any other plea or motion. But if the facts alleged and admitted do not constitute a crime against the laws of the Commonwealth, the defendant is entitled to be discharged." *Commonwealth* v. *Hinds*, 101 Mass. 209, 210.

Decisions of federal and state courts throughout the 19th and 20th centuries reflect a similar view of the nature of a guilty plea. See *United States* v. *Ury*, 106 F. 2d 28 (CA2 1939) (holding the "plea of guilty did not foreclose the appellant," who argued that a statute was unconstitutional, "from the review he now seeks" (citing earlier cases)); *Hocking Valley R. Co.* v. *United States*, 210 F. 735 (CA6 1914) (holding that a defendant may raise the claim that, because the indictment did not charge an offense no

crime has been committed, for it is "the settled rule that," despite a guilty plea, a defendant "may urge" such a contention "in the reviewing court"); *Carper* v. *State,* 27 Ohio St. 572, 575 (1875) (same). We refer to these cases because it was against this background that Justice Harlan in his opinion for the Court made the statement to which we originally referred, namely, that a defendant's "plea of guilty did not, of course, waive his previous [constitutional] claim." *Haynes,* 390 U. S., at 87, n. 2 (citing *Ury, supra,* at 28).

In more recent years, we have reaffirmed the *Menna-Blackledge* doctrine and refined its scope. In *United States* v. *Broce,* 488 U. S. 563 (1989), the defendants pleaded guilty to two separate indictments in a single proceeding which "on their face" described two separate bid-rigging conspiracies. *Id.,* at 576. They later sought to challenge their convictions on double jeopardy grounds, arguing that they had only admitted to one conspiracy. Citing *Blackledge* and *Menna*, this Court repeated that a guilty plea does not bar a claim on appeal "where on the face of the record the court had no power to enter the conviction or impose the sentence." 488 U. S., at 569. However, because the defendants could not "prove their claim by relying on those indictments and the existing record" and "without contradicting those indictments," this Court held that their claims were "foreclosed by the admissions inherent in their guilty pleas." *Id.*, at 576.

Unlike the claims in *Broce,* Class' constitutional claims here, as we understand them, do not contradict the terms of the indictment or the written plea agreement. They are consistent with Class' knowing, voluntary, and intelligent admission that he did what the indictment alleged. Those claims can be "resolved without any need to venture beyond that record." *Id.*, at 575.

Nor do Class' claims focus upon case-related constitutional defects that "'occurred prior to the entry of the

guilty plea.'" *Blackledge*, 417 U. S., at 30. They could not, for example, "have been 'cured' through a new indictment by a properly selected grand jury." *Ibid.* (citing *Tollett*, 411 U. S., at 267). Because the defendant has admitted the charges against him, a guilty plea makes the latter kind of constitutional claim "irrelevant to the constitutional validity of the conviction." *Haring* v. *Prosise*, 462 U. S. 306, 321 (1983). But the cases to which we have referred make clear that a defendant's guilty plea does not make irrelevant the kind of constitutional claim Class seeks to make.

In sum, the claims at issue here do not fall within any of the categories of claims that Class' plea agreement forbids him to raise on direct appeal. They challenge the Government's power to criminalize Class' (admitted) conduct. They thereby call into question the Government's power to "'constitutionally prosecute'" him. *Broce*, *supra*, at 575 (quoting *Menna*, *supra*, at 61–62, n. 2). A guilty plea does not bar a direct appeal in these circumstances.

## III

We are not convinced by the three basic arguments that the Government and the dissent make in reply.

*First*, the Government contends that by entering a guilty plea, Class inherently relinquished his constitutional claims. The Government is correct that a guilty plea does implicitly waive some claims, including some constitutional claims. However, as we explained in Part II, *supra*, Class' valid guilty plea does not, by itself, bar direct appeal of his constitutional claims in these circumstances.

As an initial matter, a valid guilty plea "forgoes not only a fair trial, but also other accompanying constitutional guarantees." *Ruiz*, 536 U. S., at 628–629. While those "simultaneously" relinquished rights include the privilege against compulsory self-incrimination, the jury trial right,

and the right to confront accusers, *McCarthy* v. *United States*, 394 U. S. 459, 466 (1969), they do not include "a waiver of the privileges which exist beyond the confines of the trial." *Mitchell* v. *United States*, 526 U. S. 314, 324 (1999). Here, Class' statutory right directly to appeal his conviction "cannot in any way be characterized as part of the trial." *Lafler* v. *Cooper*, 566 U. S. 156, 165 (2012).

A valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered. See, *e.g.*, *Haring, supra,* at 320 (holding a valid guilty plea "results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment"). Neither can the defendant later complain that the indicting grand jury was unconstitutionally selected. *Tollett, supra,* at 266. But, as we have said, those kinds of claims are not at issue here.

Finally, a valid guilty plea relinquishes any claim that would contradict the "admissions necessarily made upon entry of a voluntary plea of guilty." *Broce, supra*, at 573–574. But the constitutional claim at issue here is consistent with Class' admission that he engaged in the conduct alleged in the indictment. Unlike the defendants in *Broce*, Class' challenge does not in any way deny that he engaged in the conduct to which he admitted. Instead, like the defendants in *Blackledge* and *Menna*, he seeks to raise a claim which, "'judged on its face'" based upon the existing record, would extinguish the government's power to "'constitutionally prosecute'" the defendant if the claim were successful. *Broce, supra*, at 575 (quoting *Menna*, 423 U. S., at 62–63, and n. 2).

*Second*, the Government and the dissent point to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, which governs "conditional" guilty pleas. The Rule states:

"*Conditional Plea.* With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea."

The Government and the dissent argue that Rule 11(a)(2) means that "a defendant who pleads guilty *cannot* challenge his conviction on appeal on a forfeitable or waivable ground that he either failed to present to the district court or failed to reserve in writing." Brief for United States 23; see also *post*, at 3–4, 17–18 (opinion of ALITO, J.). They support this argument by pointing to the notes of the Advisory Committee that drafted the text of Rule 11(a)(2). See Advisory Committee's Notes on 1983 Amendments to Fed. Rule Crim. Proc. 11, 18 U. S. C. App., p. 911 (hereinafter Advisory Committee's Notes). In particular, the dissent points to the suggestion that an unconditional guilty plea constitutes a waiver of "nonjurisdictional defects," while the Government points to the drafters' statement that they intended the Rule's "conditional plea procedure . . . to conserve prosecutorial and judicial resources and advance speedy trial objectives," while ensuring "much needed uniformity in the federal system on this matter." *Ibid.*; see *United States* v. *Vonn*, 535 U. S. 55, 64, n. 6 (2002) (approving of Advisory Committee's Notes as relevant evidence of the drafters' intent). The Government adds that its interpretation of the Rule furthers these basic purposes. And, the argument goes, just as defendants must use Rule 11(a)(2)'s procedures to preserve, for instance, Fourth Amendment unlawful search-and-seizure claims, so must they use it to preserve the constitutional claims at issue here.

The problem with this argument is that, by its own

terms, the Rule itself does not say whether it sets forth the *exclusive* procedure for a defendant to preserve a constitutional claim following a guilty plea. At the same time, the drafters' notes acknowledge that the "Supreme Court has held that certain kinds of constitutional objections may be raised after a plea of guilty." Advisory Committee's Notes, at 912. The notes then specifically refer to the "*Menna-Blackledge* doctrine." *Ibid.* They add that the Rule "should not be interpreted as either broadening or narrowing [that] doctrine or as establishing procedures for its application." *Ibid.* And the notes state that Rule 11(a)(2) "has no application" to the "kinds of constitutional objections" that may be raised under that doctrine. *Ibid.* The applicability of the *Menna-Blackledge* doctrine is at issue in this case. Cf. *Broce*, 488 U. S., at 569 (acknowledging *Menna* and *Blackledge* as covering claims "where on the face of the record the court had no power to enter the conviction or impose the sentence"). We therefore hold that Rule 11(a)(2) cannot resolve this case.

*Third*, the Government argues that Class "expressly waived" his right to appeal his constitutional claim. Brief for United States 15. The Government concedes that the written plea agreement, which sets forth the "Complete Agreement" between Class and the Government, see App. 45–46, does not contain this waiver. *Id.*, at 48–49. Rather, the Government relies on the fact that during the Rule 11 plea colloquy, the District Court Judge stated that, under the written plea agreement, Class was "giving up [his] right to appeal [his] conviction." *Id.*, at 76. And Class agreed.

We do not see why the District Court Judge's statement should bar Class' constitutional claims. It was made to ensure Class understood "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. Rule Crim. Proc. 11(b)(1)(N). It does not expressly refer to a waiver of the appeal right

here at issue. And if it is interpreted as expressly including that appeal right, it was wrong, as the Government acknowledged at oral argument. See Tr. of Oral Arg. 35–36. Under these circumstances, Class' acquiescence neither expressly nor implicitly waived his right to appeal his constitutional claims.

\*　　\*　　\*

For these reasons, we hold that Rodney Class may pursue his constitutional claims on direct appeal. The contrary judgment of the Court of Appeals for the District of Columbia Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–424

_____

## RODNEY CLASS, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[February 21, 2018]

JUSTICE ALITO, with whom JUSTICE KENNEDY and
JUSTICE THOMAS join, dissenting.

Roughly 95% of felony cases in the federal and state
courts are resolved by guilty pleas.[1]  Therefore it is criti-
cally important that defendants, prosecutors, and judges
understand the consequences of these pleas.  In this case,
the parties have asked us to identify the claims that a
defendant can raise on appeal after entering an uncondi-
tional guilty plea.  Regrettably, the Court provides no
clear answer.

By my count, the Court identifies no fewer than five
rules for ascertaining the issues that can be raised.  Ac-
cording to the Court, a defendant who pleads guilty may
assert on appeal (1) a claim that "implicates 'the very
power of the State' to prosecute [him]," *ante,* at 4, (2) a
claim that does not contradict the facts alleged in the
charging document, *ante,* at 5–6, (3) a claim that "'the
facts alleged and admitted do not constitute a crime,'"
*ante,* at 5, and (4) claims other than "case-related constitu-
tional defects that 'occurred prior to the entry of the guilty
plea,'" *ante,* at 6–7 (some internal quotation marks omit-

_____

[1] See United States Sentencing Commission, Overview of Federal
Criminal Cases Fiscal Year 2016, p. 4 (May 2017); Dept. of Justice,
Bureau of Justice Statistics, S. Rosenmerkel, M. Durose, & D. Farole,
Felony Sentences in State Courts, 2006–Statistical Tables, p. 1 (rev.
Nov. 22, 2010).

ted). In addition, the Court suggests (5) that such a defendant may not be able to assert a claim that "contradict[s] the terms of . . . [a] written plea agreement," *ante,* at 6, but whether this rule applies when the claim falls into one of the prior four categories is left unclear. How these rules fit together is anybody's guess. And to make matters worse, the Court also fails to make clear whether its holding is based on the Constitution or some other ground.

I

There is no justification for the muddle left by today's decision. The question at issue is not conceptually complex. In determining whether a plea of guilty prevents a defendant in federal or state court from raising a particular issue on appeal, the first question is whether the Federal Constitution precludes waiver. If the Federal Constitution permits waiver, the next question is whether some other law nevertheless bars waiver. And if no law prevents waiver, the final question is whether the defendant knowingly and intelligently waived the right to raise the claim on appeal. *McMann* v. *Richardson,* 397 U. S. 759, 766 (1970).

Petitioner Rodney Class was charged with violating a federal statute that forbids the carrying of firearms on the grounds of the United States Capitol. See 40 U. S. C. §5104(e)(1). After entering an unconditional guilty plea, he appealed his conviction, asserting that his conduct was protected by the Second Amendment and that the statute he violated is unconstitutionally vague. The Court of Appeals affirmed his conviction, holding that Class had relinquished his right to litigate these claims when he entered his unconditional plea.

Analyzing this case under the framework set out above, I think the Court of Appeals was clearly correct. First, the Federal Constitution does not prohibit the waiver of the

rights Class asserts. We have held that most personal constitutional rights may be waived, see, *e.g., Peretz* v. *United States*, 501 U. S. 923, 936–937 (1991), and Class concedes that this is so with respect to the rights he is asserting, Tr. of Oral Arg. 5, 18.

Second, no federal statute or rule bars waiver. On the contrary, Rule 11 of the Federal Rules of Criminal Procedure makes it clear that, with one exception that I will discuss below, a defendant who enters an unconditional plea waives all nonjurisdictional claims. Although the Rule does not say this expressly, that is the unmistakable implication of subdivision (a)(2), which allows a defendant, "[w]ith the consent of the court and the government," to "enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." "Where [a law] explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary . . . intent." *Andrus* v. *Glover Constr. Co.*, 446 U. S. 608, 616–617 (1980). And here, there is strong evidence confirming that other exceptions were ruled out.

The Advisory Committee's Notes on Rule 11 make this clear, stating that an unconditional plea (with the previously mentioned exception) "constitutes a waiver of all nonjurisdictional defects." Notes on 1983 Amendments, 18 U. S. C. App., p. 911. Advisory Committee's Notes on a federal rule of procedure "provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed." *United States* v. *Vonn*, 535 U. S. 55, 64, n. 6 (2002).[2] Subdivision (a)(2) was adopted

————————

[2] Advisory Committee's Notes should not be equated with congressional committee reports and other items of legislative history. Advisory Committee's Notes are adopted by the committee that drafts the rule;

against the backdrop of decisions of this Court holding that a guilty plea generally relinquishes all defenses to conviction, see, *e.g., Tollett* v. *Henderson*, 411 U. S. 258, 267 (1973), and Rule 11(a)(2) creates a limited exception to that general principle. Far from prohibiting the waiver of nonjurisdictional claims, Rule 11 actually bars the raising of such claims (once again, with the previously mentioned exception).

For now, I will skip over that exception and proceed to the final question—whether Class voluntarily and intelligently waived his right to raise his Second Amendment and due process claims on appeal. It is not clear that he raised this question in the Court of Appeals, and in any event, this fact-specific inquiry is not within the scope of the question of law on which we granted review: "Whether a guilty plea inherently waives a defendant's right to challenge the constitutionality of his statute of conviction." Pet. for Cert. i. The Court does not decide the case on that ground. Nor would I.

## II

### A

I now turn to the one exception mentioned in the Advisory Committee's Notes on Rule 11—what the Notes, rather grandly, term the *"Menna-Blackledge* doctrine." Advisory Committee's Notes, 18 U. S. C. App., at 912. This "doctrine" consists of *Blackledge* v. *Perry*, 417 U. S. 21 (1974), a thinly reasoned decision handed down 44 years ago, and *Menna* v. *New York*, 423 U. S. 61 (1975) (*per curiam*), a *per curiam* decision issued the next year. These cases hold that a defendant has the right under the

_____

they are considered by the Judicial Conference when it recommends promulgation of the rule; they are before this Court when we prescribe the rule under the Rules Enabling Act, 28 U. S. C. §2072; and they are submitted to Congress together with the text of the rule under 28 U. S. C. §2074.

Due Process Clause of the Fourteenth Amendment to contest certain issues on appeal even if the defendant entered an unconditional guilty plea. Since a rule of procedure cannot abrogate a constitutional right, the Advisory Committee's Notes on Rule 11 specify that Rule 11(a)(2) "has no application" to the "*Menna-Blackledge* doctrine" and "should not be interpreted as either broadening or narrowing [that] doctrine or as establishing procedures for its application." Advisory Committee's Notes, 18 U. S. C. App., at 912.

Because this doctrine is the only exception recognized in Rule 11 and because the doctrine figures prominently in the opinion of the Court, it is important to examine its foundation and meaning.

B

*Blackledge* and *Menna* represented marked departures from our prior decisions. Before they were handed down, our precedents were clear: When a defendant pleaded guilty to a crime, he relinquished his right to litigate all nonjurisdictional challenges to his conviction (except for the claim that his plea was not voluntary and intelligent), and the prosecution could assert this forfeiture to defeat a subsequent appeal. The theory was easy to understand. As we explained in *Tollett*, our view was that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." 411 U. S., at 267. The defendant's decision to plead guilty extinguished his right to litigate whatever "possible defenses" or "constitutional plea[s] in abatement" he might have pursued at trial or on appeal. *Id.,* at 267–268. Guilty pleas were understood to have this effect because a guilty plea comprises both factual and legal concessions. Hence, we said in *Tollett*, a defendant who pleads guilty is barred from contesting not only the "historical facts" but also the "*constitutional significance*" of those facts, even if he failed to "correctly

apprais[e]" that significance at the time of his plea. *Id.,* at 267 (emphasis added).

When *Tollett* declared that a guilty plea encompasses all legal and factual concessions necessary to authorize the conviction, it was simply reiterating a principle we had enunciated many times before, most recently in the so-called "*Brady* trilogy." See *Brady* v. *United States*, 397 U. S. 742, 748 (1970) ("[T]he plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered"); *McMann*, 397 U. S., at 774 (a defendant who pleads guilty "assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts"); *Parker* v. *North Carolina*, 397 U. S. 790, 797 (1970) (similar). As we put it in *Boykin* v. *Alabama*, 395 U. S. 238, 242 (1969), "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."

On the strength of that rule, we held that defendants who pleaded guilty forfeited a variety of important constitutional claims. For instance, a defendant who pleaded guilty could not attack his conviction on the ground that the prosecution violated the Equal Protection Clause by systematically excluding African-Americans from grand juries in the county where he was indicted. *Tollett*, *supra,* at 266. Nor could he argue that the prosecution unlawfully coerced his confession—even if the confession was the only evidence supporting the conviction. *McMann*, *supra,* at 768; *Parker*, *supra,* at 796–797. Nor could he assert that his statute of conviction employed an unconstitutional penalty provision; his consent to be punished under the statute precluded this defense. *Brady*, *supra,* at 756–757. Reflecting our general thinking, then-Judge Burger explained: "[I]f voluntarily and understandingly made, even a layman should expect a plea of guilty to be treated as an honest confession of guilt and a waiver of all defenses

known and unknown. And such is the law." *Edwards* v. *United States*, 256 F. 2d 707, 709 (CADC 1958) (footnote omitted); see also A. Bishop, Waivers in Pleas of Guilty, 60 F. R. D. 513, 525–526 (1974) (summarizing the state of the law on the eve of *Blackledge*: "All the bulwarks of the fortress of defense are abandoned by the plea of guilty. . . . The plea of guilty surrenders all defenses whatever and all nonjurisdictional defects" (collecting cases)).

## III

*Blackledge* and *Menna* diverged from these prior precedents, but neither case provided a clear or coherent explanation for the departure.

## A

In *Blackledge*, the Court held that a defendant who pleaded guilty could nevertheless challenge his conviction on the ground that his right to due process was violated by a vindictive prosecution. 417 U. S., at 30–31. The Court asserted that this right was "markedly different" from the equal protection and Fifth Amendment rights at stake in *Tollett* and the *Brady* trilogy because it "went to the very power of the State to bring the defendant into court to answer the charge brought against him." 417 U. S., at 30. The meaning of this distinction, however, is hard to grasp.

The most natural way to understand *Blackledge*'s reference to "the very power of the State" would be to say that an argument survives a guilty plea if it attacks the court's jurisdiction. After all, that is usually what we mean when we refer to the power to adjudicate. See, *e.g., Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 514 (2006); *United States* v. *Cotton*, 535 U. S. 625, 630 (2002); *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 89 (1998). But that cannot be what *Blackledge* meant.

First, the defendant in *Blackledge* had been tried in state court in North Carolina for a state-law offense, and

the jurisdiction of state courts to entertain such prosecutions is purely a matter of state law (unless Congress validly and affirmatively ousts their jurisdiction—something that had not happened in that case).[3]  Second, a rule that jurisdictional defects alone survive a guilty plea would not explain the result in *Blackledge* itself.  Arguments attacking a court's subject-matter jurisdiction can neither be waived nor forfeited.  See, *e.g., Wisconsin Dept. of Corrections* v. *Schacht*, 524 U. S. 381, 389 (1998); *Miller* v. *Roberts*, 212 N. C. 126, 129, 193 S. E. 286, 288 (1937).  But the due process right at issue in *Blackledge* was perfectly capable of being waived or forfeited—as is just about every other right that is personal to a criminal defendant.  See, *e.g., Peretz*, 501 U. S., at 936–937.

So if the "very power to prosecute" theory does not refer to jurisdiction, what else might it mean?  The only other possibility that comes to mind is that it might mean that a defendant can litigate a claim if it asserts a right not to be tried, as opposed to a right not to be convicted.  But we have said that "virtually all rights of criminal defendants" are "merely . . . right[s] not to be convicted," as distinguished from "right[s] not to be tried." *Flanagan* v. *United States*, 465 U. S. 259, 267 (1984).  Even when a constitutional violation requires the dismissal of an indictment, that "does not mean that [the] defendant enjoy[ed] a 'right not to be tried'" on the charges.  *United States* v. *Mac-Donald*, 435 U. S. 850, 860, n. 7 (1978).

The rule could hardly be otherwise.  Most constitutional defenses (and plenty of statutory defenses), if successfully asserted in a pretrial motion, deprive the prosecution of the "power" to proceed to trial or secure a conviction.  If that remedial consequence converted them all into rights

―――――――――

[3] Even for cases prosecuted in federal court, an alleged vindictive prosecution does not present a jurisdictional defect.  See 18 U. S. C. §3231.

not to be prosecuted, *Blackledge* would have no discernible limit. "We have, after all, acknowledged that virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U. S. 863, 873 (1994). Indeed, "all litigants who have a meritorious pretrial claim for dismissal can reasonably claim a right not to stand trial." *Van Cauwenberghe* v. *Biard*, 486 U. S. 517, 524 (1988).

It is true that we have spoken of a distinction between a right not to be tried and a right not to be convicted in one context: when defining the scope of the collateral order doctrine. *E.g., Flanagan*, *supra,* at 265–267. That is, we have allowed defendants in federal criminal cases to take an immediate appeal from the denial of a pretrial motion when the right at issue is properly understood to be a right not to be tried. A prime example is a case in which a defendant claims that a prosecution would violate the Double Jeopardy Clause. See *Abney* v. *United States*, 431 U. S. 651, 662 (1977). Allowing an interlocutory appeal in that situation protects against all the harms that flow from the prolongation of a case that should never have been brought. See *id.,* at 661. But that rationale cannot justify the *Menna-Blackledge* doctrine, because allowing a defendant to appeal after a guilty plea does not cut short a prosecution that should never have been brought. On the contrary, it prolongs the litigation. So the distinction drawn in our collateral order cases makes no sense in distinguishing between the claims that should and the claims that should not survive a guilty plea.

Nor, in any event, would such a rule be consistent with the *decision* in *Blackledge*, because we have held that an unsuccessful vindictive prosecution claim may *not* be appealed before trial. *United States* v. *Hollywood Motor Car Co.*, 458 U. S. 263, 264 (1982) (*per curiam*). And none of this would do any good for Class, for we have never

permitted a defendant to appeal a pretrial order rejecting a constitutional challenge to the statute the defendant allegedly violated.  In fact we have repudiated the very suggestion.  *Id.,* at 270.

The upshot is that the supposed "right not to be prosecuted" has no intelligible meaning in this context.  And *Blackledge* identified no basis for this new right in the text of the Constitution or history or prior precedent.  What is more, it did all this without bothering to consider the understanding of a guilty plea under the law of the State where the *Blackledge* defendant was convicted or anything that was said to him or that he said at the time of his plea.

B

If the thinking behind *Blackledge* is hard to follow, *Menna* may be worse.  In that case, the Court held that a defendant who pleaded guilty could challenge his conviction on double jeopardy grounds.  423 U. S., at 62.  The case was decided by a three-page *per curiam* opinion, its entire analysis confined to a single footnote.  And the footnote, rather than elucidating what was said in *Blackledge*, substituted a different rationale.  Arguing that *Tollett* and the other prior related cases did not preclude appellate review of the double jeopardy claim, the Court wrote:

> "[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case.  In most cases, factual guilt is a sufficient basis for the State's imposition of punishment.  A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt."  *Menna*, 423 U. S., at 62–63, n. 2.

The wording of the final sentence is not easy to parse,

but I interpret the Court's reasoning as follows: A defendant who pleads guilty does no more than admit that he committed the essential conduct charged in the indictment; therefore a guilty plea allows the litigation on appeal of any claim that is not inconsistent with the facts that the defendant necessarily admitted. If that is the correct meaning, the sentence would overrule many of the cases that it purported to distinguish, including *Tollett*, which involved an unconstitutional grand jury claim. It would contradict much that the Court had previously said about the effect of a guilty plea. See, *e.g., Boykin*, 395 U. S., at 242 ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction"). And it would permit a defendant who pleads guilty to raise on appeal a whole host of claims, including, for example, the denial of motions to suppress evidence allegedly obtained in violation of the Fourth, Fifth, or Sixth Amendments. See, *e.g., Linkletter* v. *Walker*, 381 U. S. 618, 638 (1965) (most Fourth Amendment claims have "no bearing on guilt"). A holding of that scope is not what one expects to see in a footnote in a *per curiam* opinion, but if the Court meant less, its meaning is unclear.

C

When the Court returned to *Blackledge* and *Menna* in *United States* v. *Broce*, 488 U. S. 563 (1989), the Court essentially repudiated the theories offered in those earlier cases. (The Court terms this a "reaffirm[ation]." *Ante,* at 6.) Like *Menna*, *Broce* involved a defendant (actually two defendants) who pleaded guilty but then sought to attack their convictions on double jeopardy grounds. 488 U. S., at 565. This time, however, the Court held that their guilty pleas prevented them from litigating their claims. *Ibid.*

The Court began by specifically disavowing *Menna*'s suggestion that a guilty plea admits only "'factual guilt,'" meaning "the acts described in the indictments." *Broce,*

488 U. S., at 568–569. Instead, the Court explained, an unconditional guilty plea admits "all of the factual *and legal elements* necessary to sustain a binding, final judgment of guilt and a lawful sentence." *Id.,* at 569 (emphasis added). "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Id.,* at 570. Such "admissions," *Broce* continued, are "necessarily made upon entry of a voluntary plea of guilty." *Id.,* at 573–574. And invoking *Tollett*, the Court added that it makes no difference whether the defendant "'may not have correctly appraised the constitutional significance of certain historical facts.'" 488 U. S., at 572 (quoting 411 U. S., at 267). Thus, the Court concluded, a defendant's decision to plead guilty necessarily extinguishes whatever "potential defense[s]" he might have asserted in an effort to show that it would be unlawful to hold him liable for his conduct. 488 U. S., at 573. So much for *Menna*.

As for *Blackledge*, by holding that the defendants' double jeopardy rights were extinguished by their pleas, *Broce* necessarily rejected the idea that a right not to be tried survives an unconditional guilty plea. See *Abney*, 431 U. S., at 662 (holding for collateral-order-doctrine purposes that the Double Jeopardy Clause confers a right not to be tried).

While *Broce* thus rejected the reasoning in *Blackledge* and *Menna*, the Court was content to distinguish those cases on the ground that they involved defendants who could succeed on appeal without going beyond "the existing record," whereas the defendants in *Broce* would have to present new evidence. *Broce*, *supra,* at 575.[4]

————————

[4] The majority asserts that, unlike the defendants in *Broce*, Class can make out his constitutional arguments without needing to undertake any factual development. *Ante,* at 6. It is difficult to see how that can

## IV

### A

  This is where the *Menna-Blackledge* doctrine stood when we heard this case. Now, instead of clarifying the law, the Court sows new confusion by reiterating with seeming approval a string of catchphrases. The Court repeats the line that an argument survives if it "implicates 'the very power of the State' to prosecute the defendant," *ante,* at 4 (quoting *Blackledge*, 417 U. S., at 30), but this shibboleth is no more intelligible now than it was when first incanted in *Blackledge*. The Court also parrots the rule set out in the *Menna* footnote—that the only arguments waived by a guilty plea are those that contradict the facts alleged in the charging document, see *ante,* at 5–6, even though that rule is inconsistent with *Tollett*, the *Brady* trilogy, and *Broce*—and even though this reading

——————

be true. Class's Second Amendment argument is that banning firearms in the Maryland Avenue parking lot of the Capitol Building goes too far, at least as applied to him specifically. As his court-appointed *amicus* presented it to the Court of Appeals, this argument depends on Class's own personal characteristics, including his record of mental health and law abidingness, as well as characteristics specific to the Maryland Avenue parking lot, including, *inter alia*, its distance from the Capitol Building, the extent to which it is unsecured, the extent to which it is publicly accessible, what business typically occurs there, who regularly congregates there, and the nature of security screening visitors must pass through upon entering. See Opening Brief of Court-Appointed Amicus Curiae in Support of Appellant in No. 15–3015 (CADC), pp. 34–35, 41–45. Similarly, Class's due process argument requires an assessment of how difficult it would be for an average person to determine that the Maryland Avenue lot is part of the Capitol Grounds, which turns on the extent to which the lot is publicly accessible, how heavily trafficked it is and by what types of vehicles, whether there are signs indicating it is part of the Capitol Grounds or that guns are prohibited and where such signs are located, and whether there are security gates or checkpoints nearby. See *id.,* at 51, 53. These arguments require facts. I understand the majority opinion to preclude Class from gathering any of them that are not already in the District Court record.

would permit a defendant who pleads guilty to raise an uncertain assortment of claims never before thought to survive a guilty plea.

For example, would this rule permit a defendant to argue that his prosecution is barred by a statute of limitations or by the Speedy Trial Act? Presumably the answer is yes. By admitting commission of the acts alleged in an indictment or complaint, a defendant would not concede that the charge was timely. What about the argument that a defendant's alleged conduct does not violate the statute of conviction? Here again, the rule barring only those claims inconsistent with the facts alleged in the indictment or complaint would appear to permit the issue to be raised on appeal, but the Court says that a defendant who pleads guilty "has admitted the charges against him." *Ante,* at 7. What does this mean, exactly? The majority is coy, but "admit[ing] the charges against him" would appear to mean admitting that his conduct satisfies each element of the statute he is charged with violating. It must mean that because we have held that if a defendant does *not* understand that he is admitting his conduct satisfies each element of the crime, his guilty plea is involuntary and unintelligent and therefore invalid. *Henderson* v. *Morgan*, 426 U. S. 637, 644–645 (1976). So if a defendant who pleads guilty "admit[s] the charges against him," and if he does not claim that his plea was involuntary or unintelligent, his plea must be taken as an admission that he did everything the statute forbids.

But if that is so, then what about the rule suggested by the old Massachusetts opinion the Court touts? There, Justice Ames wrote that a guilty plea does not waive the right to argue that "'the facts alleged and admitted do not constitute a crime against the laws of the Commonwealth.'" *Ante,* at 5 (quoting *Commonwealth* v. *Hinds*, 101 Mass. 209, 210 (1869)). Does the Court agree with Justice Ames, or not?

Approaching the question from the opposite direction, the Court says that a guilty plea precludes a defendant from litigating "the constitutionality of case-related government conduct that takes place before the plea is entered." *Ante,* at 8. This category is most mysterious. I thought Class was arguing that the Government violated the Constitution at the moment when it initiated his prosecution. That sounds like he is trying to attack "the constitutionality of case-related government conduct that [took] place before the plea [was] entered." Yet the Court holds that he may proceed. Why?

Finally, the majority instructs that "a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" *Ibid.* (quoting *Broce*, 488 U. S., at 573–574). I agree with that statement of the rule, but what the Court fails to acknowledge is that the scope of this rule depends on the law of the particular jurisdiction in question. If a defendant in federal court is told that under Rule 11 an unconditional guilty plea waives all nonjurisdictional claims (or as *Broce* put it, admits "all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence," *id.,* at 569), then that is the scope of the admissions implicit in the plea.

B

Perhaps sensing the incoherence of its effort, the majority seeks refuge in history, asserting that today's holding "flows directly from this Court's prior decisions." *Ante,* at 3. But this history cannot prop up the Court's decision. Start with *Haynes* v. *United States*, 390 U. S. 85, 87, n. 2 (1968), in which the Court reached the merits of a defendant's constitutional challenge to his conviction despite the fact that he had pleaded guilty. *Ante,* at 3–4. A moment's glance reveals that this decision is irrelevant for present purposes (which presumably explains why it was not even

cited in *Blackledge*, *Menna*, *Tollett*, the *Brady* trilogy, or *Broce*).

In *Haynes*, the Government did not argue that the defendant's guilty plea barred him from pressing his constitutional challenge on appeal. In fact, the Government conceded that he would be entitled to relief if his argument had merit. 390 U. S., at 100–101. No one has suggested that a defendant's guilty plea strips an appellate court of jurisdiction to entertain a constitutional challenge to his conviction, so of course a reviewing court need not dismiss an appeal *sua sponte* if the Government does not assert the plea as a bar. But that tells us nothing about what ought to happen when, as in this case, the Government *does* argue that the defendant relinquished his right to litigate his constitutional argument when he opted to plead guilty.

One must squint even harder to figure out why the majority has dusted off *Commonwealth* v. *Hinds*, an 1869 decision of the Supreme Judicial Court of Massachusetts. *Ante,* at 5. *Hinds* involved a state-law motion ("arrest of judgment") to set aside a conviction for a state-law crime (common law forgery), in a state-court proceeding after the defendant pleaded guilty. 101 Mass., at 210. One might already be wondering what relevance the effect of a guilty plea in state court, under state law, could have with respect to the effect of a guilty plea in federal court, under federal law. But in any event, what *Hinds* says about guilty pleas is not helpful to Class at all. In Massachusetts at that time, motions to arrest a judgment could be maintained only on the ground that the court that rendered the judgment lacked jurisdiction. Mass. Gen. Stat. §79 (1860); *Commonwealth* v. *Eagan*, 103 Mass. 71, 72 (1860); 3 F. Wharton, Criminal Law §3202, p. 177 (7th rev. ed. 1874). And Massachusetts, like all the other States, can define the jurisdiction of its courts as it pleases (except insofar as federal law validly prevents).

Thus, to the extent *Hinds* "reflect[s] an understanding of the nature of guilty pleas," *ante,* at 5, it reflects nothing more than the idea that a defendant can assert jurisdictional defects even after pleading guilty. That rule is utterly unremarkable and of no help to Class. Today—as well as at the time of the founding—federal courts have jurisdiction over cases charging federal crimes. See 18 U. S. C. §3231; §9, 1 Stat. 76–77. And as early as 1830, the Court rejected the suggestion that a federal court is deprived of jurisdiction if "the indictment charges an offence not punishable criminally according to the law of the land." *Ex parte Watkins*, 3 Pet. 193, 203. We have repeatedly reaffirmed that proposition. See, *e.g., Lamar* v. *United States*, 240 U. S. 60, 64 (1916) (court not deprived of jurisdiction even if "the indictment does not charge a crime against the United States"); *United States* v. *Williams*, 341 U. S. 58, 68–69 (1951) (same, even if "the statute is wholly unconstitutional, or . . . the facts stated in the indictment do not constitute a crime"); *Cotton*, 535 U. S., at 630–631. And although a handful of our "post–1867 cases" suggested that a criminal court lacked jurisdiction if "the statute under which [the defendant] had been convicted was unconstitutional," those suggestions "reflected a 'softening' of the concept of jurisdiction" rather than that concept's originally understood—and modern—meaning. *Danforth* v. *Minnesota*, 552 U. S. 264, 272, n. 6 (2008).

\* \* \*

In sum, the governing law in the present case is Rule 11 of the Federal Rules of Criminal Procedure. Under that Rule, an unconditional guilty plea waives all nonjurisdictional claims with the possible exception of the "*Menna-Blackledge* doctrine" created years ago by this Court. That doctrine is vacuous, has no sound foundation, and produces nothing but confusion. At a minimum, I would limit the

doctrine to the particular types of claims involved in those cases. I certainly would not expand its reach.

I fear that today's decision will bedevil the lower courts. I respectfully dissent.