[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12360

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RICARDO ANTONIO RODRIGUEZ-DIAZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:21-cr-10019-JEM-2

_____

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Ricardo Antonio Rodriguez-Diaz was arrested in waters known as the exclusive economic zone (the "EEZ") of the Dominican Republic when U.S. Coast Guard officers found cocaine on his vessel. He later pleaded guilty to conspiring to possess with intent to distribute cocaine. Rodriguez-Diaz now appeals, raising various arguments about the constitutionality of the Maritime Drug Law Enforcement Act ("MDLEA"), which established jurisdiction for the offense. He also insists that the conviction should be vacated and the indictment dismissed because the government held him for too long before bringing him before a judge. All of these arguments are either foreclosed by precedent, irrelevant on the facts here, or waived by his guilty plea. We therefore affirm.

## I.    Background

Rodriguez-Diaz was arrested in November 2021 on a vessel displaying no indicia of nationality roughly 116 nautical miles south of the island Isla Beata, within the Dominican Republic's EEZ.[1] When the Coast Guard boarded Rodriguez-Diaz's vessel, a "master of the ship" was identified, but he did not wish to make a claim of

---

[1] "Under customary international law," EEZ refers to "the waters seaward of and adjacent to [a sovereign nation's] territorial sea, not extending beyond 200 nautical miles from the territorial sea baseline, as recognized by the United States." 33 C.F.R. § 2.30(b).

nationality for the vessel—so it was treated as a vessel without nationality (and therefore) subject to the jurisdiction of the United States under the MDLEA. *See* 46 U.S.C. § 70502(d)(l)(B).[2]

The Coast Guard searched the vessel and found cocaine. Rodriguez-Diaz and his codefendants were taken into United States Custody aboard the USS Sioux City, where they were detained at sea for approximately three or four weeks. They were eventually brought to port in Key West, Florida, where they made their initial appearances in court.

The government filed a two-count indictment against Rodriguez-Diaz in the Southern District of Florida. The government alleged that Rodriguez-Diaz and his codefendants conspired (Count 1) and possessed with intent to distribute (Count 2) five kilograms or more of cocaine. They did this, the government alleged, "upon the high seas and elsewhere," "on board a vessel subject to the jurisdiction of the United States," in violation of the MDLEA. *See* 46 U.S.C. § 70502 *et seq*.

In April of 2022, Rodriguez-Diaz pleaded guilty to Count 1. The government agreed to dismiss Count 2 after sentencing. Rodriguez-Diaz did not raise any constitutional claims or

---

[2] The MDLEA defines a "vessel without nationality," which is subject to the jurisdiction of the United States, as including "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." 46 U.S.C. § 70502(d)(1)(B).

challenges to the circumstances of his detention before entering his plea.

Rodriguez-Diaz was eventually sentenced to 84 months' imprisonment to be followed by two years of supervised release. He then appealed.

## II.    Discussion

Rodriguez-Diaz raises four arguments for the first time on appeal. First, he argues that his conviction must be vacated for lack of jurisdiction because the EEZ is not part of the "high seas" and thus Congress lacked the authority to regulate conduct in the EEZ. Next, he argues that Congress exceeded its authority in subjecting vessels to the jurisdiction of the United States by labeling them "stateless" if the claimed nation does not *unequivocally* confirm the vessel's country of origin, in defiance of customary international law. After that, he argues more broadly that Congress lacked any authority to criminalize his conduct because it lacked any nexus to the United States. And finally, he argues that the case against him should be dismissed because the government held him in custody for four weeks without bringing him before a magistrate judge.

None of these arguments has merit. The first is foreclosed by precedent; the second is irrelevant because it challenges the wrong basis for jurisdiction; the third is also foreclosed by precedent; and the last was waived when Rodriguez-Diaz entered an unconditional guilty plea. We briefly explain each point.

### A. *Jurisdiction in the EEZ*

Rodriguez first argues that, because his offense occurred within the EEZ of the Dominican Republic, it did not occur on the "high seas" under "customary international law" and, thus, Congress had no power to criminalize his conduct under the Felonies Clause of the Constitution—meaning the district court lacked jurisdiction to entertain his prosecution.[3]

This argument, however, is squarely foreclosed by our recent decision in *United States v. Alfonso*.  In *Alfonso,* we held that the scope of the Felonies Clause is not constrained by international law and the EEZ is part of the "high Seas" within the meaning of the Felonies Clause—meaning Congress has the authority to

---

[3] The Constitution gives Congress power "[t]o define and punish Piracies and Felonies Committed on the high seas, and Offences against the Law of Nations."  U.S. Const. art. I § 8, cl. 10.  The relevant provision "bestows on Congress 'three distinct grants of power:' (1) 'the power to define and punish piracies,' (the Piracies Clause); (2) 'the power to define and punish felonies committed on the high [S]eas,' (the Felonies Clause); and (3) 'the power to define and punish offenses against the law of nations' (the Offences Clause)." *United States v. Alfonso*, --- F.4th ---, 2024 WL 2987204, at *3 (11th Cir. June 14, 2024) (quoting *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012)).  Rodriguez-Diaz's challenge goes to Congress's authority to regulate conduct on the "high Seas."

Despite pleading guilty, Rodriguez-Daiz is permitted to "question the Government's power to constitutionally prosecute" his offense. *Class v. United States*, 583 U.S. 174, 181–82 (2018) (quotations omitted).  Additionally, although Rodriguez-Diaz did not raise this issue in the district court, we review the constitutional challenge he presents *de novo*, because it is "based on subject matter jurisdictional grounds." *Alfonso*, 2024 WL 2987204, at *2.

enforce the MDLEA in the EEZ. *See* 2024 WL 2987204, at *4–9. In reaching this decision, we rejected the argument, pressed by Rodriguez-Diaz here, that our earlier decision in *Bellaizac-Hurtado* required us to define "high seas" by reference to customary international law. *See id.* at *6. Simply put, *Alfonso* squarely answers and rejects Rodriguez-Diaz's argument—and we need not address the issue further. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (explaining that under the prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc").

### B. *Congress's definition of a "vessel without nationality"*

Rodriguez-Diaz next argues that his conviction must be vacated because, in enacting the MDLEA, Congress exceeded its authority under the Felonies Clause by defining "vessel without nationality" in 46 U.S.C. § 70502(d)(1)(C) to include vessels on which "the master or individual in charge [of the vessel] makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality[.]" According to Rodriguez-Diaz, the First Circuit recognized in a now-vacated opinion that "[i]nternational law recognizes that an oral claim by the vessel's master constitutes *prima facie* proof of the vessel's nationality." (citing *United States v. Davila-Reyes*, 23 F.4th 153, 186 (1st Cir.), *reh'g en banc granted, opinion withdrawn & judgment vacated*, 38 F.4th 288 (1st Cir. 2022)).

22-12360                Opinion of the Court                7

So, he reasons, by "allow[ing the] United States to exercise jurisdiction over vessels that are not truly stateless under international law," Congress has "displace[d] that *prima facie* claim" established by international law, "and exceeded its powers under the Felonies Clause."[4]  The problem is that—as Rodriguez-Diaz acknowledges—"no claim of registry was made" on his vessel, so the entire argument is beside the point.  Jurisdiction over the vessel was not established under § 70502(d)(1)(C).  Rather, the vessel was deemed a vessel without nationality under § 70502(d)(1)(B)— where no claim of nationality was made for the vessel—and he does not challenge that definition.  Accordingly, we do not address his challenge to the definition in § 70502(d)(1)(C), as that provision does not apply to his case.

### C.  Nexus Argument

Next up, Rodriguez-Diaz argues "that his prosecution both exceeds Congress'[s] limited powers and violates due process based on the absence of any nexus between his offense and the United States."

---

[4] "We ordinarily review *de novo* the constitutionality of a statute, because it presents a question of law," *United States v. Valois*, 915 F.3d 717, 729 n.7 (11th Cir. 2019), but when, as here, "a defendant raises a constitutional challenge for the first time on appeal, we review only for plain error," *Alfonso*, 2024 WL 2987204, at ⋆3, ⋆10 n.18 (rejecting the argument that a constitutional challenge to the stateless designation of a vessel under 46 U.S.C. § 70502(d)(1)(c) is one of subject matter jurisdiction).

8                    Opinion of the Court                    22-12360

He acknowledges, however, "that this Court has rejected similar arguments," and so raises the matter "for purposes of further review[.]" *See United States v. Campbell*, 743 F.3d 802, 809–10 (11th Cir. 2014) (rejecting the argument that "the conduct proscribed by the [MDLEA] need[ed] [to] have a nexus to the United States" in order to be regulated by Congress"); *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020) (rejecting the argument that a defendant's due process rights are violated if their offenses lack a nexus to the United States); *Alfonso*, 2024 WL 2987204 at *1, n.4 (confirming that such nexus-based claims are foreclosed by prior panel precedent). We therefore do not address this issue further. *See Archer*, 531 F.3d at 1352.

### D. *Prolonged Detention Challenge*

Finally, Rodriguez-Diaz argues that the indictment should be dismissed because the government delayed four weeks before bringing him before a magistrate judge in violation of Federal Rule of Criminal Procedure 5.[5] The government, in turn, asserts that this claim is waived by his unconditional guilty plea.

---

[5] For example, Rule 5(a)(1)(B) states that "[a] person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise." Rule 5(b) further provides that, "[i]f a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed." Because the offense here was committed outside the United States, the MDLEA provides for venue in any district. *See* 46 U.S.C. § 70504(b)(2).

We agree with the government. "A valid guilty plea . . . renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *Class*, 583 U.S. at 182. Rodriguez-Diaz "does not dispute the validity of his plea, so he cannot complain about the specific facts of his detention." *United States v. Castillo*, 899 F.3d 1208, 1214 (11th Cir. 2018) (holding that the defendant's guilty plea foreclosed his argument that a 19-day delay between his arrest and his appearance before a magistrate judge was unreasonable and violated due process). Thus, this claim is waived by his guilty plea.

### III.    Conclusion

In sum, Rodriguez-Diaz's arguments all fail, so we affirm his conviction and sentence.

**AFFIRMED.**