*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EDWARD PINKNEY,

       Plaintiff-Appellant,

v

STATE OF MICHIGAN, DEPARTMENT OF
CORRECTIONS, and BERRIEN COUNTY
PROSECUTOR'S OFFICE,

       Defendants-Appellees.

UNPUBLISHED
May 26, 2022

No. 356363
Court of Claims
LC No. 18-000112-MM

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

In this constitutional-tort case, plaintiff, Edward Pinkney, appeals as of right an order granting summary disposition to the State of Michigan (SOM) and the Department of Corrections (DOC)[1] under MCR 2.116(C)(8) and (10) and denying plaintiff's request to amend his complaint. Plaintiff also challenges an earlier grant of summary disposition to defendant Berrien County Prosecutor's Office (BCPO) under MCR 2.116(I)(2). The crux of plaintiff's claims is that his due process rights under the Michigan Constitution were violated when he was charged, convicted, imprisoned, and subject to parole supervision for a violation of MCL 168.937[2] because the Michigan Supreme Court later concluded that this statute does not, in fact, create a substantive crime. We affirm.

---

[1] The SOM and DOC are often referred to as one entity below and on appeal; accordingly, this opinion employs the blended acronym "SOM/DOC."

[2] This statute states:

> Any person found guilty of forgery under the provisions of this act shall, unless herein otherwise provided, be punished by a fine not exceeding $1,000.00, or by imprisonment in the state prison for a term not exceeding 5 years, or by both such fine and imprisonment in the discretion of the court. [MCL 168.937.]

-1-

## I. BACKGROUND AND BASIC FACTS

Pertinent background facts for the present case are set forth in *People v Pinkney*, 501 Mich 259, 264; 912 NW2d 535 (2018) (*Pinkney II*):

> Defendant [i.e., plaintiff in the present case] was charged with five counts of election-law forgery under MCL 168.937 and six counts of making a false statement in a certificate-of-recall petition under MCL 168.957. After being bound over to the Berrien Circuit Court on these charges, defendant filed a motion to quash arguing, *inter alia*, that § 937 is a penalty provision, not a substantive, chargeable offense. The circuit court denied the motion to quash, and the case proceeded to trial. After an eight-day trial, the jury returned verdicts of guilty on the five felony counts and not guilty on the six misdemeanor counts. In a motion for a directed verdict, defendant again argued that § 937 is a penalty provision and not a substantive offense. The circuit court denied the motion and sentenced defendant to concurrent prison terms of 30 to 120 months.

After plaintiff appealed, this Court engaged in statutory construction and looked favorably to an unpublished opinion—*People v Hall*, unpublished per curiam opinion of the Court of Appeals, issued October 23, 2014 (Docket No. 321045), rev'd on other grounds 449 Mich 446 (2016)—and concluded that § 937 sets forth a substantive offense. *People v Pinkney*, 316 Mich App 450, 462-465; 891 NW2d 891 (2016) (*Pinkney I*), rev'd by *Pinkney II*.[3] The Supreme Court disagreed, concluding that § 937 is a penalty provision and that the Legislature appeared to have inadvertently left it in—without a corresponding substantive offense—when amending the statutory scheme. *Pinkney II*, 501 Mich at 285-287. The Supreme Court stated, "After focusing on the plain language, context, and history of § 937, we conclude that it is nothing more than an inoperative penalty provision," adding, "[W]e recognize that our conclusion that § 937 is an inoperative penalty provision is an unusual one, and it is not one that we reach lightly." *Id*. at 287.

---

[3] In *Hall*, unpub op at 6, this Court stated, "Reviewing this statute in the context of the Michigan election law as a whole[] indicates that MCL 168.937 is not merely a penalty provision, but rather creates a substantive offense of forgery." The Michigan Supreme Court reversed this Court's opinion on other grounds, and it stated, in part:

> The Court of Appeals held that this statute creates a substantive offense . . . . Although the defendant argued in the Court of Appeals that MCL 168.937 does not create a substantive offense, he did not appeal this holding or otherwise pursue this argument, and the parties did not otherwise ask us to review it. We therefore decline to reach this question. [*People v Hall*, 449 Mich 446, 449 n 2; 884 NW2d 561 (2016).]

The Court in *Pinkney I* stated, "[W]hile our Supreme Court's decision in *Hall* . . . does not specifically address the issue of whether MCL 168.937 creates a substantive offense, it certainly does not compel a conclusion other than the one that we have reached in this case." *Pinkney I*, 316 Mich App at 467.

After the vacating of his convictions by the Michigan Supreme Court, plaintiff filed the present lawsuit on the basis of a theory with roots in the United States Supreme Court case of *Monell v Dep't of Social Servs of City of New York*, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978). In *Monell*, *id*. at 690, the Court stated:

> Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom [42 USC] 1983[4] applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

After the issuance of *Monell*, this Court indicated that a *Monell*-type claim can be made against the *state*—not just local government units—for violations of the *Michigan Constitution*. For example, in *Carlton v Dep't of Corrections*, 215 Mich App 490, 504-505; 546 NW2d 671 (1996), the Court stated:

> A claim for damages against the state arising from a violation by the state of the Michigan Constitution may be recognized in appropriate cases. Liability for a violation of the state constitution should be imposed on the state only in those cases in which the state's liability would, but for the Eleventh Amendment,[5] render

---

[4] This statute deals with civil actions for the deprivation of rights and states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. [42 USC 1983.]

[5] The Eleventh Amendment "safeguards the state's sovereignty in our federal system of government." *Jones v Powell*, 462 Mich 329, 333-334; 612 NW2d 423 (2000).

it liable under the 42 USC § 1983 standard for local governments articulated in *Monell*[.]

In *Monell*, the United States Supreme Court held that a local government would be liable under § 1983 only when the execution of an official policy or custom caused a person to be deprived of federal constitutional rights. The policy or custom must be the moving force behind the constitutional violation in order to establish liability.

Thus, the state will be liable for a violation of the state constitution only in cases where a state custom or policy mandated the official or employee's actions. [Quotation marks and citations omitted.]

Plaintiff filed his complaint "against the State of Michigan, the Michigan Department of Corrections and Berrien County Prosecutor's Office (a Sub-Entity, Arm and/or Agency of the State of Michigan for Purposes of the Claims Herein) due to violations of the Plaintiff's constitutional rights." Plaintiff stated that "Defendant Berrien County Prosecutor is a subentity, arm and/or agency of the State of Michigan and is being sued in order to hold this subentity, arm and/or agency of the State of Michigan liable for the constitutional violation(s) herein as opposed to Michael Sepic [who held the position of Berrien County Prosecutor at the time of defendant's trial and conviction] being held personally liable for damages in his individual capacity." Plaintiff alleged that Sepic was a policymaker for purposes of holding the *state* liable under a *Monell*-type theory and violated plaintiff's constitutional rights by prosecuting plaintiff and convicting him of a nonexistent crime. He also alleged that the SOM/DOC had a policy of incarcerating and paroling convicted persons and that this policy rendered the state liable for violating plaintiff's constitutional rights.

After plaintiff filed a motion for partial summary disposition under MCR 2.116(C)(10), the lower court granted summary disposition to the BCPO under MCR 2.116(I)(2), concluding that the Court of Claims lacked subject-matter jurisdiction for a claim against the BCPO because it was a county office.[6] Later, the court granted the SOM/DOC's motion for summary disposition under

---

[6] MCL 600.6419(1)(a) indicates that the Court of Claims has jurisdiction

[t]o hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court.

The phrase "the state or any of its departments or officers" is defined in MCL 600.6419(7) to mean

this state or any state governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of the state, or an officer, employee, or volunteer of this state or any governing, legislative, or judicial body, department,

-4-

MCR 2.116(C)(8) and (10), concluding that no state policy was at issue for a claim such as that discussed in *Carlton* because the BCPO was a local—not a state—office. The court concluded that an additional basis for dismissal was the fact that plaintiff had not alleged a constitutional due-process violation because he in fact *received* due process throughout the criminal proceedings. The court also denied as futile plaintiff's attempt to amend the complaint.

## II. STANDARDS OF REVIEW

As stated in *Stehlik v Johnson*, 206 Mich App 83, 85; 520 NW2d 633 (1994):

> Summary disposition is reviewed de novo, because this Court must review the record to determine whether the moving party was entitled to judgment as a matter of law. MCR 2.116(C)(8) permits summary disposition when the opposing party has failed to state a claim upon which relief can be granted. A motion under this subsection determines whether the opposing party's pleadings allege a prima facie case. The court must accept as true all well-pleaded facts. Only if the allegations fail to state a legal claim is summary disposition pursuant to MCR 2.116(C)(8) valid. A motion pursuant to MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim. MCR 2.116(C)(10) permits summary disposition when, except for the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to damages as a matter of law. A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. [Citations omitted.][7]

This Court reviews for an abuse of discretion a trial court's ruling regarding a motion to amend a complaint. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 215-216; 859 NW2d 238 (2014). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *In re Kostin*, 278 Mich App 47, 51; 748 NW2d 583 (2008).

commission, board, institution, arm, or agency of this state, acting, or who reasonably believes that he or she is acting, within the scope of his or her authority while engaged in or discharging a government function in the course of his or her duties.

This statutory grant of jurisdiction "does not extend to local officials." *Mays v Snyder*, 323 Mich App 1, 47; 916 NW2d 227 (2018), aff'd 506 Mich 157 (2020).

[7] As noted, the court granted summary disposition to the BCPO under MCR 2.116(I)(2). "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 590; 794 NW2d 76 (2010) (quotation marks and citation omitted).

III. ANALYSIS

"Where it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available in a state court action." *Smith v Dep't of Pub Health*, 428 Mich 540, 544; 410 NW2d 749 (1987), aff'd sub nom *Will v Mich Dep't of State Police*, 491 US 58 (1989). There is authority for concluding that the decision to charge and prosecute plaintiff for a crime under the ostensible authority of MCL 168.937 was a "policy" for purposes of a *Monell*-type analysis. See, e.g., *Pembaur v City of Cincinnati*, 475 US 469, 480-481; 106 S Ct 1292; 89 L Ed 2d 452 (1986), superseded in part by statute as recognized by *Francis v Carroll*, 659 F Supp 2d 619, 626 (Del, 2009); see also *Mays v Snyder*, 323 Mich App 1, 63-64; 916 NW2d 227 (2018), aff'd 506 Mich 157 (2020). The parties hotly dispute, however, whether the BCPO was acting as an arm of the county or an arm of the state in prosecuting plaintiff. Ultimately, we need not resolve this question because even if the Court of Claims erred regarding the "state actor" issue, dismissal was nevertheless warranted on the basis of plaintiff's failure to allege or support any viable constitutional violation. See, e.g., *Mays*, 323 Mich App at 58 (noting that a threshold question in determining the availability of a damages remedy was whether the plaintiffs had "alleged facts that, if proved true, are sufficient to establish . . . a [constitutional] violation").

As noted, the Court of Claims indicated that an additional basis for dismissal—beyond the "state actor" issue—was the fact that plaintiff had, in fact, obtained full due process throughout the criminal proceedings.[8] Indeed, it is not in dispute that plaintiff had traditional notice and an opportunity to be heard; this process was, of course, what led to the ultimate overturning of his convictions. Plaintiff, citing *Hurtado v California*, 110 US 516; 4 S Ct 111; 28 L Ed 232 (1884) among other cases, suggests that he did not obtain due process because the charging document did not contain a crime, and *Hurtado*, *id*. at 525, states that a crime must be set forth in an indictment or other document.[9] But an ostensible crime was set forth against plaintiff, and in fact, on the day his trial began, a panel of this Court in *Hall* concluded that MCL 168.937 set forth a substantive offense. Plaintiff is attempting to analogize the present case to a situation in which an accused received no notice of the offense being alleged, but plaintiff received such notice and had a full, fair, and comprehensive opportunity to defend himself and raise his objections—one of which was ultimately successful. See, generally, *In re Rood*, 483 Mich 73, 92-93; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.) (discussing requirements for procedural due process).

Statements from the case of *Baker v McCollan*, 443 US 137; 99 S Ct 2689; 61 L Ed 433 (1979), are also instructive by analogy. In *Baker*, *id*. at 145, the Court said, "The [federal] Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide

---

[8] Const 1963, art 1, § 17, states, in part, "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

[9] Plaintiff also relies heavily on *Class v United States*, ___ US ___; 138 S Ct 798; 200 L Ed 2d 37 (2018). But *Class* merely indicates that a plea of guilt does not obviate a person's ability to argue that the statute under which he or she was convicted was unconstitutional. See *id*., 138 S Ct at 802-803. Here, plaintiff already raised and "won" his argument that the statute under which he was convicted did not provide a valid means for convicting him.

a cause of action for every defendant acquitted—indeed, for every suspect released." The *Baker* Court also stated, "The Fourteenth Amendment [of the United States Constitution] does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.' " *Id*. The fact that plaintiff was successful in vacating his convictions does not automatically mean that his due-process rights were violated.

Defendant also argues that his imprisonment was void—and that the SOM/DOC is liable independent of any actions of the BCPO—because the process he obtained was inadequate. But his process was, in fact, adequate under constitutional standards for procedural due process. Plaintiff further contends that the trial court's order was erroneous because the lower court considered only procedural due process and not substantive due process. It is true that the court did not undertake an analysis of substantive due process, but we may nevertheless consider it upon our de novo review of the summary-disposition decision. See, e.g., *Mays*, 323 Mich App at 58 ("[W]e must review the matter de novo, giving no deference to the lower court decision, in order to determine whether defendants were entitled to judgment as a matter of law.").

In *Mays*, *id*., the Court stated, "The due process guarantee of the Michigan Constitution is coextensive with its federal counterpart," and added, "The doctrine of substantive due process protects unenumerated fundamental rights and liberties under the Due Process Clause of the Fourteenth Amendment." (Quotation marks and citations omitted.) In *Mettler Walloon LLC v Melrose Twp*, 281 Mich App 184, 200; 761 NW2d 293 (2008), the Court explained that a viable claim regarding the violation of the right to substantive due process involves an action so arbitrary in the constitutional sense so as to "shock the conscience." "Michigan courts have acknowledged that the essence of a substantive due process claim is the *arbitrary* deprivation of liberty or property interests." *Id*. at 201. "To state a cognizable substantive due process claim, the plaintiff must allege conduct intended to injure in some way unjustifiable by any government interest and that is conscience-shocking in nature." *Id*. at 201-202 (quotation marks and citations omitted). "At a minimum, proof of deliberate indifference is required." *Mays*, 323 Mich App at 61.[10]

The charges against defendant and his convictions, imprisonment, and parole were not arbitrary in the constitutional sense, were not intended to injure in a way unjustifiable by any government interest, and did not shock the conscience. The statute in question was clearly subject to different interpretations by reasonable minds. Recall that in *Pinkney II*, 501 Mich at 287, the Michigan Supreme Court stated, "[W]e recognize that our conclusion that § 937 is an inoperative penalty provision is an *unusual* one, and it is not one that we reach lightly." (Emphasis added.)

---

[10] A plurality of the United States Supreme Court indicated in *Albright v Oliver*, 510 US 266, 271-272; 114 S Ct 807; 127 L Ed 2d 114 (1994):

> As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. [Quotation marks and citation omitted.]

The persons or institutions responsible for charging, trying, and imprisoning plaintiff and supervising him on parole were not acting with deliberate indifference but were reasonably attempting to implement an existing statute. Under these circumstances, defendant did not allege or provide evidentiary support for a substantive due-process claim in connection with the actions of the BCPO or the DOC.[11]

Plaintiff also raises an argument about his attempt to amend the complaint. MCR 2.116(A)(2) states, in part, that "a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." "Leave to amend should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *In re Kostin*, 278 Mich App at 52. "An amendment is futile if it merely restates the allegations already made[.]" *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 209; 920 NW2d 148 (2018) (quotation marks and citation omitted). Plaintiff, in seeking an amendment, was not seeking to raise any new claims but was simply attempting to clarify that he was relying on the Michigan Due Process Clause and *Monell*. The trial court did not abuse its discretion by denying the motion to amend the complaint.

Affirmed.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford

---

[11] We note that the DOC was required to fulfill its duties of imprisoning plaintiff and supervising his parole and was not empowered to release him until being informed that the convictions had been vacated. In imprisoning plaintiff for convictions that were later deemed improper, the DOC did not choose a course of action from among various alternatives. See *Mays*, 323 Mich App at 64.