[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Swazey*, Slip Opinion No. 2023-Ohio-4627.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4627

THE STATE OF OHIO, APPELLANT, *v.* SWAZEY, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Swazey*, Slip Opinion No. 2023-Ohio-4627.]**

*Criminal law—Crim.R. 12(C)(2)—A trial court may consider facts beyond four corners of indictment to rule on merits of a defendant's pretrial motion to dismiss under Crim.R. 12(C)(2) when motion challenges whether law set forth in indictment applies to defendant—Defendant who pleaded guilty did not waive constitutional right to challenge on appeal trial court's dismissal of his Crim.R. 12(C)(2) motion to dismiss challenging state's ability to prosecute—Court of appeals' judgment affirmed and cause remanded to trial court.*

(No. 2022-0382—Submitted March 22, 2023—Decided December 22, 2023.)

APPEAL from the Court of Appeals for Medina County,

No. 21CA0031-M, 2022-Ohio-993.

_____

**BRUNNER, J.**

**{¶ 1}** Appellee, Michael Swazey Jr., was indicted for failing to pay child support. He filed a motion to dismiss the indictment under Crim.R. 12(C)(2), which addresses pretrial motions. Swazey asserted that the statutes he allegedly violated did not apply to him. The trial court declined to consider Swazey's motion on the merits, holding that the arguments he raised were not permitted under Crim.R. 12(C)(2) but should instead be presented at the close of the state's case at trial. Swazey subsequently pleaded guilty to all counts.

**{¶ 2}** The Ninth District Court of Appeals held that Swazey's Crim.R. 12(C)(2) motion was proper and should have been considered on the merits. It also held that by entering a guilty plea, Swazey did not waive his right to raise a constitutional challenge on appeal. We agree with the court of appeals on both points. We therefore affirm its judgment and remand this cause to the trial court to consider Swazey's motion.

## I. Background

**{¶ 3}** In December 2019, Swazey was indicted on three felony counts of nonsupport of a dependent, in violation of R.C. 2919.21(B). The indictment alleged that Swazey had violated court orders to support his child, K.S., during three separate 26-week periods out of 104 consecutive weeks. Count 1 alleged that he had failed to provide support between November 1, 2013, and October 31, 2015; Count 2 alleged nonpayment of support between November 1, 2015, and October 31, 2017; and Count 3 alleged nonpayment of support between November 1, 2017, and October 31, 2019. The indictment also alleged that Swazey had previously been convicted of violating R.C. 2919.21(B). Swazey pleaded not guilty to all counts.

**{¶ 4}** On March 2, 2020, Swazey moved to dismiss the indictment. He argued that his obligation to provide support for K.S. had terminated on June 8, 2014, and that after that date he owed only arrearages. In support of his motion, he

provided a copy of a court order stating that his support obligation "[was] terminated effective 6-8-2014" because K.S. "[had] reached the age of eighteen (18) and [had] graduated from high school." The order also states, "Any arrearage that exists shall be paid at a rate of $208.86 per month plus 2% processing charge until further order of [the] court or until the arrearage is paid in full."

**{¶ 5}** Swazey argued that his owing only arrearages required dismissal of the indictment. He noted that R.C. 2919.21(B) was materially amended in 2019, but he argued that he could not be held criminally liable for failing to pay arrearages under either the pre-amended or amended version of that statute.

**{¶ 6}** In 2013, the first relevant date in the indictment, R.C. 2919.21(B) provided, "No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person *is* legally obligated to support." (Emphasis added.) 2011 Am.Sub.H.B. No. 86. In 2016, we considered "whether, pursuant to R.C. 2919.21(B), the state may prosecute a person who failed to make the payments set forth in an arrearage-only order issued after the date of his children's emancipation." *State v. Pittman*, 150 Ohio St.3d 113, 2016-Ohio-8314, 79 N.E.3d 531, ¶ 16. We held that it may not, stating:

> R.C. 2919.21(B) is unambiguous. It criminalizes a person's failure to support—in the manner established by a court order— another person whom he is legally obligated to support. Because the statute uses the present tense in the phrase "is legally obligated to support," a person charged with a violation must be under a current obligation to provide support.

*Id.* at ¶ 18. Swazey claims that his position is similar to the defendant's in *Pittman* because Swazey's dependent was emancipated in 2014 and his indictment charged

him with failure to make payments on an arrearages-only order.  Therefore, he says, he cannot be held criminally liable for violating the earlier version of the statute.

{¶ 7} The General Assembly has since amended R.C. 2919.21(B).  As of the February 11, 2019 amendment, that statutory division provides as follows:

> (1) No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person:
>
> (a) *Is* legally obligated to support; *or*
>
> (b) *Was* legally obligated to support, and an amount for support:
>
> (i) *Was* due and owing prior to the date the person's duty to pay current support terminated; and
>
> (ii) Remains unpaid.

(Emphasis added.)  2018 Sub.S.B. No. 70.  While the statute now permits the prosecution of a person who fails to make payments on an arrearages-only order, Swazey argues that the amended version of R.C. 2919.21(B) applies only prospectively and that applying the amended version to him would violate the Retroactivity Clause of the Ohio Constitution and the Ex Post Facto Clause of the United States Constitution.  *See* Ohio Constitution, Article II, Section 28; U.S. Constitution, Article I, Section 10, cl. 1.

{¶ 8} The trial court denied Swazey's motion to dismiss.  It held that the matter "[was] not appropriate for resolution through the use of a motion to dismiss," because a motion to dismiss "tests the sufficiency of the indictment" and the court "may determine only whether the indictment is valid on its face."  The court explained that Swazey's motion was "based on factual assertions and evidentiary

4

matters outside the face of the indictment" and that such issues are "better suited" for a motion for acquittal at the close of the state's case.

{¶ 9} Swazey then changed his plea to guilty on all three counts. The trial court sentenced him to 180 days in jail and two years of community control.

{¶ 10} The court of appeals reversed. 2022-Ohio-993, ¶ 17. It concluded that Crim.R. 12(C)(2) allows Swazey's issue to be resolved on a motion to dismiss the indictment. *Id*. at ¶ 12.

{¶ 11} Crim.R. 12(C) provides, "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." The rule then lists several issues that "must be raised before trial," including "[d]efenses and objections based on defects in the indictment, information, or complaint." Crim.R. 12(C)(2).

{¶ 12} The appellate court concluded that the argument Swazey presented in his motion to dismiss would not require the trial court to determine the "general issue to be determined at trial." 2022-Ohio-993 at ¶ 11. It noted that this court had addressed a similar issue in *State v. Palmer*, 131 Ohio St.3d 278, 2012-Ohio-580, 964 N.E.2d 406, ¶ 24 ("*Palmer*"). In that case, the defendant had been convicted of sexual battery in 1995 and completed his prison sentence on March 15, 1997. *State v. Palmer*, 10th Dist. Franklin Nos. 09AP-956 and 09AP-957, 2010-Ohio-2421, ¶ 2, 14. The General Assembly enacted the Adam Walsh Act in 2007. That act imposed sweeping sex-offender-registration requirements, regardless of the date of the offenses. 2007 Am.Sub.S.B. No. 10; *Palmer*, 2012-Ohio-580 at ¶ 7. In 2009, a grand jury indicted Palmer for failing to comply with certain registration requirements under the Adam Walsh Act. *Id*. at ¶ 9. The defendant moved to dismiss the indictment, and the trial court granted the motion, finding that the act did not apply to him. *Id*. at ¶ 10. The appellate court concluded that the motion was improper under Crim.R. 12(C), but we reversed. *Id*. at ¶ 11, 28. We held that "an indictment is defective if it alleges violations of [a statutory provision] by a

person who is not subject to that [provision]," especially when the "indictment depends on the unconstitutional application of law." *Id*. at ¶ 23. And making that determination does not mean that the trial court would be deciding the "general issue" in the case—namely, "whether the accused violated the law as set forth in the indictment." *Id*. at ¶ 24. We concluded that the trial court in *Palmer* acted properly when it dismissed the indictment before trial. *Id*. at ¶ 28.

{¶ 13} In this case, the Ninth District viewed the argument Swazey presented in his motion to dismiss as similar to the argument made by the defendant in *Palmer*. It held that to decide Swazey's motion, "the trial court would only need to determine when Mr. Swazey's support order terminated." 2022-Ohio-993 at ¶ 11. It explained that the general issues for trial, by contrast, would be "the existence of a support order" and whether Swazey had "failed to pay his court ordered support" and that neither of those issues would need to be addressed for the trial court to rule on Swazey's motion to dismiss the indictment under Crim.R. 12(C)(2). *Id*. at ¶ 11.

{¶ 14} The appellate court also rejected the state's argument that Swazey's guilty plea barred him from challenging on appeal the denial of his motion to dismiss. *Id*. at ¶ 14. We previously held, " 'A guilty plea * * * renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.' " (Ellipsis added in *Fitzpatrick*.) *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 78, quoting *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), fn. 2. The appellate court concluded that Swazey's retroactivity argument was not included within this rule. 2022-Ohio-993 at ¶ 14. It explained that even if the state proved the relevant facts—that Swazey failed to make child-support payments during the times identified in each count—Swazey's argument was that applying the amended version of R.C. 2919.21(B) to him would violate the Ohio and United

States Constitutions. His guilty pleas therefore did not bar him from raising the constitutional issue on appeal. The appellate court remanded the case to the trial court to resolve the issues raised in Swazey's motion to dismiss. The state sought our jurisdiction, and we accepted the state's two propositions of law for review:

> [I.] A motion to dismiss an indictment may only be decided in a defendant's favor if it can be determined from the face of the indictment that the indictment is legally defective.
>
> [II.] A guilty plea bars a defendant from appealing a trial court's denial of a motion to dismiss the indictment where the issue raised by the motion is whether a statute is retroactive, which is an issue of statutory interpretation.

*See* 167 Ohio St.3d 1467, 2022-Ohio-2490, 191 N.E.3d 437.

## II. Analysis

### A. *Proposition of Law No. I*

{¶ 15} The state argues that a court may grant a motion to dismiss under Crim.R. 12(C)(2) only when the alleged defect in the indictment can be determined from its face. It contends that a motion to dismiss that requires the court to look at facts outside the indictment necessarily seeks summary judgment and as the Ninth District has observed, "[t]he Ohio Rules of Criminal Procedure * * * do not allow for 'summary judgment' on an indictment prior to trial," *State v. Roman*, 9th Dist. Lorain No. 06CA009025, 2007-Ohio-4341, ¶ 4. The state therefore seeks to have this court hold as the Eighth District Court of Appeals has held: that a motion to dismiss tests only the sufficiency of the indictment or complaint "without regard to the quantity or quality of evidence that may be produced by either the state or the defendant," and a trial court considering such a motion should ask only "whether the allegations contained in the indictment or complaint make out offenses under

Ohio criminal law," *State v. Eppinger*, 162 Ohio App.3d 795, 2005-Ohio-4155, 835 N.E.2d 746, ¶ 37 (8th Dist.).  The state posits that any argument requiring the court to consider facts outside the face of the indictment may be presented only in a motion for acquittal after the state has presented its case.

**{¶ 16}** The state points out that Swazey's motion to dismiss included factual assertions and a document beyond the face of the indictment—specifically, the June 8, 2014 order terminating his child-support obligation.  Thus, according to the state, Swazey did not present an argument that could be considered in a motion to dismiss under Crim.R. 12(C)(2) and therefore the trial court properly denied the motion.

**{¶ 17}** The state also contends that the appellate court's holding would allow the trial court to decide the "general issue" of the case—Swazey's guilt—in violation of Crim.R. 12(C).  Under the state's view, whether the amended version of R.C. 2919.21(B) applies retroactively and, if so, whether its retroactive application is a constitutional violation are questions that "go to the ultimate issue in the case."

**{¶ 18}** Swazey, on the other hand, argues that the trial court should have considered his motion to dismiss on the merits.  He contends that his motion to dismiss presents the exclusively legal issue whether the statute applies to him, rather than the factual "general issue" whether he is guilty as charged.  He emphasizes that the plain text of Crim.R. 12(C) refers only to whether the issue is capable of being determined without ruling on the "general issue," which must be reserved for trial.  He also notes the similarity of his situation to that presented in *Palmer*, in which we considered a Crim.R. 12(C)(2) motion to dismiss and held that "[a] trial court may dismiss an indictment * * * when it determines that the [laws] do not apply to the accused," *Palmer*, 131 Ohio St.3d 278, 2012-Ohio-580, 964 N.E.2d 406, at paragraph two of the syllabus.

**{¶ 19}** We agree with Swazey. As we have previously recognized, "Crim.R. 12 permits a court to consider evidence beyond the face of an indictment when ruling on a pretrial motion to dismiss an indictment if the matter is capable of determination without trial of the general issue." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 3; *see also Palmer* at ¶ 24, citing *Brady* at ¶ 18 (when considering a motion under Crim.R. 12(C)(2), a trial court "may look beyond the four corners of the indictment"). This conclusion is drawn from the rule itself.

**{¶ 20}** Nothing in Crim.R. 12(C) expressly prohibits a court from dismissing an indictment based on material outside the indictment. The first sentence in the rule is permissive: "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." *Id.* The rule then identifies issues that "must be raised before trial," such as "[d]efenses and objections based on defects in the indictment, information, or complaint." Crim.R. 12(C)(2). Other issues that must be raised in a Crim.R. 12(C) pretrial motion include defects in the institution of the prosecution, suppression of evidence, requests for discovery, requests to sever charges or trials of multiple defendants, and requests to appoint expert witnesses or investigators. Crim.R. 12(C)(1) and (3) through (7). The rule contains no language restricting the arguments raised in a motion to dismiss to the content within the four corners of the indictment.

**{¶ 21}** Crim.R. 12(F) also supports Swazey's position: "The court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means." Thus, the criminal rules expressly permit the trial court to consider factual material outside the record, and motions filed under Crim.R. 12(C) commonly contain such material. By way of example, a trial court considering a motion to suppress may accept affidavits or hold a hearing at which witnesses testify. Crim.R. 12(F). A motion challenging the institution of

the prosecution or requesting the severance of multiple charges or the trial of multiple defendants often also involves factual material relevant to the motion that is outside the record. *Id*. And nothing in the text of either Crim.R. 12(C) or (F) suggests that Crim.R. 12(F) does not apply to Crim.R. 12(C)(2) motions to dismiss.

{¶ 22} Given this, we decline to hold that a motion to dismiss an indictment under Crim.R. 12(C) prohibits a trial court from considering material beyond the four corners of the indictment. Holding otherwise would impose an arbitrary restriction on the trial court's consideration of motions to dismiss that is not supported by Crim.R. 12. The rule as written promotes judicial economy and preserves the resources of courts, attorneys, and litigants by streamlining trials. The rule was written to further these objectives without preempting litigation when the facts are in dispute. This is why Crim.R. 12(C) prohibits courts from entertaining motions that decide "the trial of the general issue." The fact that Swazey's motion to dismiss called for the trial court to consider material outside the four corners of the indictment—namely, the 2014 order terminating his child-support obligation—does not change the fact that it is the type of motion contemplated by Crim.R. 12(C).

{¶ 23} Crim.R. 12(C)(2) requires parties to file pretrial motions "based on *defects* in the indictment, information, or complaint." (Emphasis added.) Our holding here reaffirms our holding in *Palmer*:

> Under Crim.R. 12(C)(2), trial courts may judge before trial whether an indictment is defective. Without a doubt, an indictment is defective if it alleges violations of R.C. Chapter 2950 [sex-offender classification and registration] by a person who is not subject to that chapter. There is no set of circumstances under which such a person can violate the law's requirements. This is especially so where, as in [this] case, an indictment depends on the

> unconstitutional application of law. Therefore, dismissal is appropriate.

*Id.*, 131 Ohio St.3d 278, 2012-Ohio-580, 964 N.E.2d 406, at ¶ 23. In *Palmer*, we recognized that determining whether an indictment is defective "does not embrace the general issue for trial" when the issue is the applicability of the statute to the defendant's conduct. *Id.* at ¶ 24. When the general issue for trial is "whether the accused violated the law as set forth in the indictment," then when "the law simply does not apply, the trial court is well within its authority to dismiss the indictment before trial." *Id.*

{¶ 24} Swazey set forth three arguments in his motion: (1) the amended version of R.C. 2919.21(B)(1) applies only prospectively; (2) applying the amended version of R.C. 2919.21(B)(1) to him would constitute an unconstitutional retroactive application of the law; and (3) the 2013 version of R.C. 2919.21(B)(1) does not apply to a person under an arrearages-only order. Each argument focuses on an alleged defect in the indictment.

{¶ 25} The first two arguments are properly raised in a Crim.R. 12(C)(2) motion based on the analysis contained in *Palmer*. Notably, Swazey's second argument is the same argument made in *Palmer*, and the first is not materially different. Both arguments are that the indictment is defective because it alleges that illegal conduct was committed when the amended version of the statute either did not apply or could not apply to Swazey. In neither argument does Swazey ask the trial court to decide the general issue for trial, which is whether Swazey violated the amended version of R.C. 2919.21(B)(1).

{¶ 26} Swazey's third argument—concerning the 2013 version of R.C. 2919.21(B)(1)—also befits a motion to dismiss under Crim.R. 12(C)(2). Swazey, in referring to the 2014 order terminating his child-support obligation, pointed to an alleged legal defect in the indictment, which was not limited to

arrearages.  He argues that the 2014 order terminated his child-support obligation except for the payment of arrearages that had accumulated through June 8, 2014. He argues that this court has interpreted the 2013 version of R.C. 2919.21(B) as not applying to a person under an arrearages-only order.[1]  His argument that there is no set of circumstances under which a person in his position can violate the 2013 version of R.C. 2919.21(B)(1)'s requirements was posited fairly within the bounds of Crim.R. 12(C).  Nothing in the third argument presented in Swazey's motion seeks to have the trial court decide the general issue whether he violated the 2013 version of R.C. 2919.21(B)(1) as set out in the indictment.

**{¶ 27}** In short, Swazey's arguments made in his Crim.R. 12(C)(2) motion to dismiss should have been considered before trial.  In reaching this conclusion, we express no opinion on the merits of any of the arguments that Swazey raised in his motion.  Nor do we express any opinion regarding whether the arguments, if found to have merit, would require dismissal of the indictment in whole or in part. We simply hold that the trial court erred in declining to decide Swazey's motion based on its conclusion that the arguments Swazey made could not be presented in a Crim.R. 12(C)(2) motion.  On remand, the trial court is to consider the motion.

*B.  Proposition of Law No. II*

**{¶ 28}** In its second proposition of law, the state argues that it has long been the law that a defendant who voluntarily, knowingly, and intelligently enters a guilty plea "waives all nonjurisdictional defects in prior stages of the proceedings," *Ross v. Auglaize Cty. Common Pleas Court*, 30 Ohio St.2d 323, 323-324, 285

---

1. As noted above, Swazey's argument on this point is based on this court's holding in *Pittman*, 150 Ohio St.3d 113, 2016-Ohio-8314, 79 N.E.3d 531.  In his motion to dismiss, however, Swazey notes that we had agreed to consider another case involving the application of R.C. 2919.21(B)(1) after a support order had terminated.  *See State v. Brown*, 156 Ohio St.3d 1491, 2019-Ohio-3263, 129 N.E.3d 475.  We issued a decision in *State v. Brown*, 161 Ohio St.3d 276, 2020-Ohio-4623, 162 N.E.3d 769, on September 30, 2020, holding that a defendant may be prosecuted for nonpayment under the pre-2019 version of R.C. 2919.21(B) "when the conduct underlying the charge occurred while a support order was in effect, even if the child of the defendant [was] emancipated at the time the charge is brought," *id.* at ¶ 15.

N.E.2d 25 (1972). As a result, the state contends, a defendant who pleads guilty " 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea,' " *Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, at ¶ 78, quoting *Tollet v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1975).

{¶ 29} The state asserts that the appellate court misread *Fitzpatrick* and created a "massive, game-changing exception" to this rule. The appellate court relied on the following statement in *Fitzpatrick*: " 'A guilty plea * * * renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established,' " (ellipsis added.) *id.*, quoting *Menna*, 423 U.S. at 62, 96 S.Ct. 241, 46 L.Ed.2d 195, fn. 2. The state argues that the exception noted in *Fitzpatrick* is unclear and cannot be applied to Swazey's plea or else the inverse of the statement would have to be true: that constitutional violations logically inconsistent with establishing factual guilt *are* relevant after a defendant pleads guilty. This is in fact correct and a necessary implication of *Fitzpatrick* and this court's earlier case, *State v. Wilson*, 58 Ohio St.2d 52, 388 N.E.2d 745 (1979). In *Wilson*, this court held that on appeal, a defendant may challenge the constitutionality of the statute he was convicted under, even if he had pleaded guilty. *Id.* at paragraph one of the syllabus. This court held that most appellate issues are waived when a defendant pleads guilty because a guilty plea is a reliable admission of factual guilt. *Id.* at 54. However, when a constitutional challenge alleges that the state may not convict the defendant no matter how thoroughly his factual guilt is established, the defendant may bring that challenge despite having pleaded guilty. *Id.* at 54-55. Constitutional violations that go to the ability of the state to prosecute, regardless of factual guilt, may be raised on appeal from a guilty plea. *Id.* at 55.

**{¶ 30}** It is also the clear holding of the United States Supreme Court in *Menna* and *Class v. United States*, 583 U.S.___, 138 S.Ct. 798, 200 L.Ed.2d 37 (2018). *See Menna* at 62-63 (defendant's guilty plea did not waive his right to argue that the trial court erred by denying his motion to dismiss the indictment on double-jeopardy grounds). In *Class*, the Supreme Court held that a guilty plea does not bar a defendant from challenging the constitutionality of the statute of conviction. *Id.* at __, 138 S.Ct. at 806-807. The Supreme Court said that its holding reflects the nature of guilty pleas, which are confessions of the facts charged in an indictment. *Id.* at __, 138 S.Ct. at 805. The Supreme Court held that the guilty plea did not waive the defendant's right to challenge the constitutionality of the statute, because his guilty plea amounted to an admission that he had engaged in the alleged conduct but his constitutional claims were "consistent with [his] knowing, voluntary, and intelligent admission that he did what the indictment alleged." *Id.* at __, 138 S.Ct. at 804.

**{¶ 31}** Finally, the state argues that even if a defendant may challenge constitutional violations on appeal after entering a guilty plea, Swazey's argument here does not primarily involve a constitutional issue. Specifically, the state contends that Swazey's argument that amended R.C. 2919.21(B) does not apply retroactively is one of statutory interpretation. On this basis, the state argues, the *Fitzpatrick* exception does not apply and Swazey has thus waived his retroactivity argument even though he has consistently challenged the constitutionality of applying the amended version of R.C. 2919.21(B)(1) to him. This is exactly the sort of argument that fits within the exception noted in *Fitzpatrick* and *Wilson:* that the amended version of R.C. 2919.21(B)(1) would not permit a finding of guilt even if Swazey is found to not have made his arrearage payments.

**{¶ 32}** The state further argues that the trial court would first have to draw factual and legal conclusions, triggering waiver, before it could reach Swazey's constitutional question. That is, the trial court, according to the state, would have

to conclude that the amended version of R.C. 2919.21(B)(1) applies retroactively before it reaches the constitutional question, and on that basis, waiver cuts off reaching the constitutional question in this case.

{¶ 33} We see no appreciable difference between interpreting a statute as retroactive and concluding that because it is retroactive, it is unconstitutional. Were we to treat Swazey's constitutional argument piecemeal, not only would we elevate form over substance but we would also be denying him any remedy to which he might be entitled under the Ohio and United States Constitutions.

{¶ 34} We therefore conclude that Swazey's guilty plea did not constitute a waiver of his ability to challenge on appeal the denial of his motion to dismiss.

*C. The Dissenting Opinion*

{¶ 35} The dissenting opinion focuses on one of the arguments raised by the state in response to Swazey's motion to dismiss: that even if Swazey were correct about the retrospective application of the amended statute, he still would not be entitled to have Counts One and Three dismissed, because those counts covered periods that would permit the state to obtain convictions at trial without violating the Ohio or United States Constitutions. Dissenting opinion, ¶ 54-60. But the dissent falls short in its analysis because it fails to recognize that the state's argument simply provided the trial court with a reason to conclude that the indictment was not defective as to Counts One and Three, negating any need to dismiss those counts. If the trial court had agreed with the state's argument, it would not have needed to decide whether Swazey had actually failed to make any particular payment during the periods covered by Counts One and Three. It simply would have had to deny Swazey's motion as to those counts and allow the case to move forward. At trial, the parties would have then presented their evidence to a jury, and the jury would have been left to decide the general issue whether Swazey

failed to make payments for at least 26 weeks under each count. Swazey's motion, therefore, did not require the trial court to consider the general issue for trial.[2]

{¶ 36} The dissenting opinion also takes the position that by pleading guilty, Swazey waived his ability to challenge on appeal the trial court's denial of his motion to dismiss. The dissenting opinion's primary argument depends on a recasting of the trial court's decision on Swazey's motion to dismiss as a mere "procedural case-management decision." Dissenting opinion at ¶ 68. As we explained above, the trial court did not simply defer consideration of the motion under its power to manage the progression of the case before it. The trial court *denied* the motion as improper under Crim.R. 12(C)(2)—a decision that we hold was legally erroneous. Contrary to the decision of the trial court, we hold that Swazey's motion to dismiss was permitted under Crim.R. 12(C)(2). In fact, filing it before trial was *required* by that rule. *See* Crim.R. 12(C)(2) (motions based on defects in the indictment "*must* be raised before trial" [emphasis added]). And as we also explained above, Swazey presented a constitutional challenge in his motion, alleging that the state could not constitutionally convict him no matter how thoroughly his factual guilt might be established. The argument Swazey made was therefore the caliber of argument that binding precedent instructs is not waived by a guilty plea.

{¶ 37} Finally, the dissenting opinion's insistence that the exception to the guilty-plea waiver rule does not apply here misses the foundational problem that Swazey's motion did not call for the trial court to consider evidence that was then or is now part of the record regarding required payments. Regardless of how the dissenting opinion attempts to recast it, Swazey's motion to dismiss did not require the trial court to decide general issues for trial.

---

2. As noted above, we express no opinion on the merits of the arguments Swazey raised in his motion. Nor do we express any opinion whether his arguments, if found to have merit, would require dismissal of the indictment in whole or in part.

### III.  Conclusion

**{¶ 38}** For these reasons, we conclude that Swazey's motion to dismiss was proper under Crim.R. 12(C)(2) and that by entering a guilty plea, he did not waive his right to raise on appeal his constitutional challenge to the indictment.  We therefore affirm the Ninth District Court of Appeals' judgment and remand the cause to the trial court to consider Swazey's pretrial motion.  In the event the trial court denies Swazey's motion as to any of the counts charged in the indictment, his convictions shall be reinstated as to those counts.

Judgment affirmed

and cause remanded to the trial court.

FISCHER, DONNELLY, and STEWART, JJ., concur.

DEWINE, J., dissents, with an opinion joined by KENNEDY, C.J., and DETERS, J.

_____

**DEWINE, J., dissenting.**

**{¶ 39}** The majority upholds the determination of the court of appeals that the trial court erred by denying Michael Swazey Jr.'s pretrial motion to dismiss the indictment and instead deferring consideration of his arguments until the close of the state's case.  As a remedy for this error, it concludes that notwithstanding Swazey's plea of guilty to each of the three counts charged, the case should be remanded to the trial court for consideration of Swazey's pretrial motion to dismiss. I disagree.

**{¶ 40}** The majority tells us that under Crim.R. 12(C)(2), the trial court was required to consider the merits of Swazey's motion to dismiss prior to trial because the motion could have been decided without consideration of the "general issue" in the case. Majority opinion, ¶ 26.  Unfortunately, the majority opinion leaves critical facts out of its analysis.  When these facts are considered, it is evident that a full adjudication of Swazey's motion to dismiss required consideration of the evidence

that would be introduced at trial. Thus, it would have been impossible to grant Swazey's motion to dismiss the indictment without consideration of the general issue in the case. Consequently, the trial court did not err in deferring consideration of the arguments presented in the motion to dismiss until the close of the state's evidence.

{¶ 41} On this basis alone, the decision of the court of appeals should be reversed and Swazey's conviction reinstated. There is also a second, independent reason that the decision of the court of appeals should be reversed. The error that Swazey advanced on appeal and that is the basis of the majority's judgment—the trial court's deferment of its decision on the merits of the motion to dismiss until the close of evidence—was waived by Swazey through his voluntary entry of a guilty plea.

{¶ 42} Because I do not believe the trial court erred in deferring its decision on the motion to dismiss and because I disagree with the majority's analysis of the effect of Swazey's guilty plea, I dissent from the majority's judgment.

**I. Swazey Pleads Guilty to the Three-Count Indictment**

{¶ 43} Swazey was indicted on three felony counts of nonsupport of a dependent in violation of R.C. 2919.21(B). Count One of the indictment charged the following:

> Michael Swazey, Jr. on or about the 1st day of November, 2013 through the 31st day of October, 2015, at the county of Medina aforesaid, did abandon, or fail to provide support for a total accumulated period of twenty-six weeks out of one hundred four consecutive weeks, whether or not the twenty-six weeks were consecutive as established by a court order to * * *, whom, by court order or decree, Michael Swazey, Jr. was legally obligated to

support in violation of [R.C.] 2919.21(B), Nonsupport of Defendants, a felony of the fourth degree.

{¶ 44} Counts Two and Three of the indictment were identical to Count One except they covered different periods. Count Two covered November 1, 2015, through October 31, 2017. Count Three covered November 1, 2017, through October 31, 2019. Each count also alleged that Swazey had previously been convicted of failing to pay child support in violation of R.C. 2919.21(B), a fact that elevated the nonsupport crime to a fourth-degree felony. *See* R.C. 2919.21(G)(1).

{¶ 45} Swazey filed a motion to dismiss the indictment, alleging that the current version of R.C. 2919.21(B) does not apply to his conduct. Swazey noted that the nonsupport statute had been amended in 2019. *See* 2018 Sub.S.B. No. 70 (effective Feb. 11, 2019). Prior to the amendment, the statute criminalized only a person's failure to support someone whom the "the person *is* legally obligated to support." (Emphasis added.) 2011 Am.Sub.H.B. No. 86. In support of his motion, Swazey presented a court order that stated his support obligation had terminated on June 8, 2014, because his dependent had reached her 18th birthday and had graduated from high school. The order also provided that any arrearages shall be paid at $208.86 per month.

{¶ 46} Citing this court's decision in *State v. Pittman*, 150 Ohio St.3d 113, 2016-Ohio-8314, 79 N.E.3d 531, Swazey argued that because he only owed arrearages after his daughter was emancipated, she was not someone that he was legally obligated to support under the prior version of R.C. 2919.21(B). The state responded by arguing that the current version of the nonsupport statute applies retroactively to the entirety of Swazey's conduct. Pursuant to the February 11, 2019 amendment, R.C. 2919.21(B) criminalizes both a person's failure to pay support to someone the person "*is* legally obligated to support" and a person's

failure to pay support to someone the person "*was* legally obligated to support." (Emphasis added.)

{¶ 47} Importantly, the state also pointed out that even if the trial court adopted Swazey's position, prosecution would be precluded for only one count of the indictment. Regarding Count One, it explained that even accepting Swazey's evidence that his daughter was emancipated on June 8, 2014, there still remained more than 26 weeks for which Swazey had failed to pay support prior to her emancipation. As to Count Three, the state explained that the period set forth in the indictment included more than 26 weeks after the effective date of the amended version of the nonsupport statute during which Swazey had failed to make payments under the arrearages order. Thus, even if the court accepted Swazey's argument about the applicability of the amended statute, he still could be found guilty of two counts in the indictment.

{¶ 48} Following a hearing on the motion to dismiss, the trial court determined that the matter was not appropriate for resolution through a motion to dismiss. In doing so, the court noted that the motion to dismiss depended on "factual assertions and evidentiary matters outside of the indictment." The court held instead that Swazey's arguments were "better suited for a motion for acquittal at the close of" the state's evidence and therefore denied Swazey's motion.

{¶ 49} Rather than raise his retroactivity argument at the close of evidence, Swazey chose to enter a guilty plea to each of the three counts. He signed a written plea of guilty, which was also signed by the state and the trial court. The written plea stated: "I have been informed that by pleading guilty I waive my right to appeal any issues that might have been raised had I gone to trial and been convicted, and I understand that right of appeal and it is my intention to waive it." Prior to accepting Swazey's plea, the trial court conducted a Crim.R. 11 plea colloquy. Among other things, Swazey acknowledged that "a plea of guilty is a complete admission of [his] guilt to the charges set forth in the indictment." He also acknowledged that he

understood that by pleading guilty he was giving up his "right to appeal [his] conviction in this matter."

{¶ 50} In the context of this case, Swazey's decision to plead guilty made sense. Because Swazey had previously been convicted of nonsupport, he faced up to 18 months in prison for each of the three counts in the indictment. *See* R.C. 2929.14(A)(4). And even if the court had accepted his retroactivity argument, he still could have been convicted and sentenced to prison on two counts. Further, by pleading guilty, Swazey could anticipate that the court would consider his acceptance of responsibility at sentencing. *See State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 17 ("Acceptance of responsibility is an appropriate sentencing consideration"). The court ultimately sentenced Swazey at the lower end of the sentencing range: it chose not to impose prison time and ordered instead that Swazey serve 180 days in the county jail and two years of community control.

{¶ 51} Swazey appealed, presenting a single assignment of error that asserted that the trial court had erred in overruling his motion to dismiss the indictment. Within that assignment of error, Swazey argued that the court should have reached the merits of the motion to dismiss, rather than defer consideration until the close of the state's evidence, because amended R.C. 2919.21(B) could not be applied retroactively to his conduct.

{¶ 52} The court of appeals reversed Swazey's convictions. 2022-Ohio-993, ¶ 17. It held that the trial court had erred by declining to consider the merits of Swazey's motion to dismiss prior to trial because the motion could have been decided without consideration of the general issue in the case. *Id.* at ¶ 11-12. It further held that Swazey did not waive the right to raise this error on appeal by pleading guilty. *Id.* at ¶ 14. The appellate court remanded the matter to the trial court to "resolve the issues set forth in * * * Swazey's motion to dismiss." *Id.* at ¶ 15. The majority affirms the decision of the court of appeals. I would not.

## II. The Trial Court Did Not Err in Deferring Decision on the Merits of Swazey's Motion to Dismiss Until the Close of Evidence

{¶ 53} The majority correctly determines that nothing in Crim.R. 12(C)(2) precludes a trial court from considering matters "beyond the four corners of the indictment" in ruling on a motion to dismiss. Majority opinion at ¶ 22. The majority also correctly notes that by its terms, Crim.R. 12(C)(2) prohibits a trial-court judge from considering the general issue for trial when ruling on a pretrial motion to dismiss. Majority opinion at ¶ 22.

{¶ 54} But after correctly stating the rule, the majority proceeds to misapply it in this case. The majority states that Swazey argued in his motion to dismiss that amended R.C. 2919.21(B)(1) could not be applied to his conduct, because the statute only applies prospectively and applying the statute retroactively would be unconstitutional. *See* majority opinion at ¶ 24. But the majority leaves out critical facts—specifically, the state's response to Swazey's argument and the trial court's inquiries at the motion-to-dismiss hearing.

{¶ 55} In response to the motion to dismiss, the state argued that the indictment was valid on its face and that the trial court could not consider evidence outside the indictment in adjudicating Swazey's motion. It also argued that the amended statute applied to Swazey's conduct. But in addition, the state argued that even if the court accepted Swazey's argument, there would still not be a basis to dismiss the indictment:

> Even if the February 11, 2019 R.C. 2919.21(B) amendment is taken to be prospective in operation (or retroactive but an unconstitutional Ex Post Facto law), which it is not, Counts I and III of the indictment would still survive. Count I is for the period from November 1, 2013 through October 31, 2015. The child support order in this case was terminated effective June 8, 2014 when the

22

child was emancipated. Therefore, there was an active child support order in place from November 1, 2013 through June 8, 2014 in which Swazey paid no child support. This period was longer than the 26 weeks required for a felony non-support charge. Count III is for the period from November 1, 2017 through October 31, 2019. From February 11, 2019 when R.C. 2919.21(B) was amended through October 31, 2019, Swazey again paid no child support for well over the required 26 weeks and therefore could be charged with an additional count of felony non-support.

{¶ 56} At the hearing on the motion to dismiss, the trial court immediately focused on this last issue. As soon as defense counsel began oral argument, the trial-court judge interrupted and asked, "[C]an you give me a timeline that helps me understand what you mean in this particular situation with prospective and retrospective?" After counsel recounted the dates set forth in the indictment, the court interjected, "So there would be some portion of this time period that would * * * be after the statute became effective * * *?" Not satisfied with counsel's response, the court continued to drill down on the issue:

> THE COURT: My question to you was, there's a portion of the period that falls under the statute. It may not be two years but there's a portion there.
> [DEFENSE COUNSEL]: Yes, Your Honor, from February 2019 to October 31st, 2019, yes, Your Honor.

Later, the judge commented to defense counsel, "[Y]ou're asking me to look at evidence that is not yet before me in making a ruling."

**{¶ 57}** Following the hearing, the court took the matter under advisement and subsequently issued a short order explaining that because Swazey's motion depended on "factual assertions and evidentiary matters" outside the indictment, "[Swazey's] arguments are better suited for a motion for acquittal at the close of the State's [case]."

**{¶ 58}** I don't see how this was error. The period of nonpayment set forth in Count One of the indictment included over 31 weeks before the child was emancipated—a period in which it is undisputed that Swazey had a legal obligation to pay support. Count Three of the indictment included over 37 weeks of nonpayment after the amended statute went into effect—a period in which it was undisputed that Swazey had a legal obligation to pay support under the arrearages order. The state needed to show only that Swazey had failed to make payments for 26 weeks of the relevant periods to obtain a conviction on each of those counts. *See* R.C. 2919.21(G)(1). Thus, even if Swazey were correct in his arguments about the retrospective application of the amended statute, the state could still obtain a conviction on Counts One and Three if it put on evidence establishing that Swazey had failed to provide support for at least 26 weeks during the indictment period before the child was emancipated (Count One) and for at least 26 weeks after the statute was amended (Count Three).

**{¶ 59}** Whether Swazey failed to make payments that he was legally obligated to make is "the general issue" in the case. *See* Crim.R. 12(C). Thus, the issue that Swazey raised by motion—a request to dismiss the indictment—was not one that was "capable of determination without the trial of the general issue," *id.*

**{¶ 60}** (The majority—unwittingly, it seems—confirms the truth of this proposition. It says that if the court had accepted Swazey's arguments, it could have denied the motion to dismiss and "the jury would have been left to decide the *general issue* whether Swazey failed to make payments for at least 26 weeks under each count" (emphasis added), majority opinion at ¶ 35. But that's precisely the

24

point. The court did deny the motion to dismiss, allowing Swazey to renew his arguments after the close of evidence. And it was correct in doing so, because there was no way to grant the motion to dismiss as to Counts One and Three without resolution of the "general issue" of whether (and when) Swazey failed to make payments.)

{¶ 61} Of course, if the trial court accepted Swazey's legal arguments, it could have opted to simply dismiss Count Two in response to Swazey's motion to dismiss and leave the remainder of the counts for trial. And doing so might have made sense from a case-management standpoint. But that was not the relief that Swazey sought in his motion to dismiss.

{¶ 62} Because the trial court did not err in deferring consideration of Swazey's motion to dismiss, the judgment of the court of appeals should be reversed. The majority errs in doing otherwise. The majority also errs in its treatment of Swazey's guilty pleas.

### III. The Effect of Swazey's Guilty Pleas

{¶ 63} Swazey raised only one assignment of error in the court of appeals—that the trial court erred in overruling his motion to dismiss the indictment. As I have explained above, there was no error: the trial court was well within its discretion to defer ruling on the motion to dismiss until the close of evidence. Because Swazey did not raise any other error in the court of appeals, the court of appeals should have simply affirmed the trial court's judgment. And because the court of appeals did not, we should reverse the court of appeals' judgment.

{¶ 64} The majority, however, concludes that the trial court erred in deferring consideration of the merits of Swazey's motion to dismiss and then rejects the state's argument that by entering a guilty plea to each of the three counts in the indictment, Swazey waived his right to challenge any error committed by the trial court. Here, again, its analysis is lacking.

### A. *Swazey's Guilty Pleas Preclude Him from Challenging the Trial Court's Purported Procedural Error*

**{¶ 65}** Under Ohio law, a defendant may enter a guilty plea, which "is a complete admission of the defendant's guilt." Crim.R. 11(B)(1). Alternatively, with the permission of the court, a defendant may enter a no-contest plea, which "is not an admission of the defendant's guilt, but is an admission of the truth of the facts alleged in the indictment." Crim.R. 11(B)(2). There is no indication in the record that Swazey sought to enter a no-contest plea, which would have required him to admit only the facts in the indictment. Instead, Swazey voluntarily elected to enter a plea of guilty to each of the three counts.

**{¶ 66}** "A valid guilty plea by a counseled defendant * * * generally waives the right to appeal all prior nonjurisdictional defects * * *." *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 15. This is consistent with the distinction that Crim.R. 11(B)(1) makes between guilty pleas and no-contest pleas.

**{¶ 67}** Nonetheless, a narrow exception has been developed in the caselaw that encompasses situations in which "on the face of the record the court had no power to enter the conviction or impose the sentence." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). This exception has been held to include situations where the statute of conviction violates the Constitution. *See Class v. United States*, 583 U.S. __, __, 138 S.Ct. 798, 804-805, 200 L.Ed.2d 37 (2018); *see also State v. Wilson*, 58 Ohio St.2d 52, 55, 388 N.E.2d 745 (1979). The majority holds that this exception applies to allow Swazey to appeal his convictions notwithstanding his guilty pleas.

**{¶ 68}** The problem is that the only error that Swazey raised on appeal was the trial court's failure to grant his pretrial motion to dismiss and instead to defer consideration of his legal arguments until the close of evidence. This was not an allegation of error that went to the state's power to prosecute Swazey but simply one about a procedural case-management decision of the trial court. There is no

question that a defendant who enters a guilty plea waives the right to raise such challenges on appeal.[3]  *See, e.g.*, *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 77-78 (defendant who pleads guilty may not challenge disposition of pretrial motions).  Indeed, the exception to the guilty-plea waiver rule on which the majority relies applies only to "constitutional determinations," *Class* at ___, 138 S.Ct. at 803.

*B.  Even If Swazey Had Challenged the Constitutionality of the Statute of Conviction, His Pleas Would Have Barred His Challenge to Counts One and Three Because His Challenge Depends on Evidence Outside the Existing Record*

{¶ 69} Furthermore, even if Swazey had challenged the constitutionality of the statute of his conviction, his challenge, at least to Counts One and Three, would be barred by his guilty pleas.

{¶ 70} The cases that the majority relies on all dealt with claims that could be decided without venturing beyond the existing record.  In *Class*, the United States Supreme Court explained that the exception to the guilty-plea waiver rule only applies to constitutional claims that "do not contradict the terms of the indictment or the written plea agreement," *id.*, __ U.S. at __, 138 S.Ct. at 804, 200

---

3. It is also worth noting that Swazey signed a written plea waiver in which he waived the right to "appeal any issues that might have been raised had [he] gone to trial and been convicted."  There is no indication that there was any such waiver in any of the cases on which the majority relies.  Indeed, in *Class*, the United States Supreme Court specifically noted that the defendant had signed only a limited appellate waiver, which did not waive his right to argue that the statute at issue was unconstitutional.  *Id.* at __, 138 S.Ct. at 802.  Importantly, in cases decided since *Class*, federal courts have continued to find express written waivers of appellate rights to be enforceable.  *See, e.g.*, *United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir.2018), fn. 11 (*Class* is inapplicable because defendant signed an "express appeal waiver far broader than did the plea agreement at issue in *Class*"); *United States v. Mejia-Quintanilla*, 9th Cir. No. 17-15899, 2022 U.S. App. LEXIS 22344, *2-3 (Aug. 11, 2022) (rejecting argument that *Class* precluded court from giving effect to an express written waiver of right to appeal); *Khan v. United States*, D.N.M. Nos. CR 12-2901 RB/CG and CV 17-0744 RB, 2018 U.S. Dist. LEXIS 92934, *33 (May 31, 2018) (because defendant "waived his right to appeal his conviction as well as his right to collaterally attack his conviction on any issue other than ineffective assistance of counsel[, t]he holding in *Class* is * * * inapplicable").  The state in this case, however, neglected to make any argument to this court and to the court of appeals about the express waiver.  Thus, at least arguably, the issue has been forfeited.  *See State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 25.

L.Ed.2d 37—that is, claims that can be "resolved 'on the basis of the existing record,' " *id.* at __, 138 S.Ct. at 801, quoting *Broce*, 488 U.S. at 575, 109 S.Ct. 757, 102 L.Ed.2d 927. *Wilson* involved a facial challenge to a statute on equal-protection and due-process grounds and was resolved simply based on a comparison of the elements of two statutes. *Id.*, 58 Ohio St.2d at 55-60, 388 N.E.2d 745. And "[i]n *Menna* [*v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975)], the indictment was facially duplicative of the earlier offense of which the defendant had been convicted and sentenced so that the admissions made by Menna's guilty plea could not conceivably be construed to extend beyond a redundant confession to the earlier offense." *Broce* at 575-576.

**{¶ 71}** Here, in contrast, on remand the trial court will necessarily need to consider new evidence that is not currently part of the record to rule in Swazey's favor. By pleading guilty, Swazey admitted that for each count, he had failed to provide support for 26 weeks out of a 104-week period to a person whom he "[w]as legally obligated to support," R.C. 2919.21(B)(1)(b). On its face, there is nothing incompatible about these pleas and Swazey's retroactivity argument. Even if the trial court accepts Swazey's retroactivity argument, the conduct that Swazey admitted to in the indictment—failing to pay support for 26 of 104 weeks to someone he was legally obligated to support—is still legally sufficient for the state to convict Swazey on Counts One and Three. Thus, the only way that Swazey could be acquitted on these counts would be for the trial court to consider new evidence that is inconsistent with his pleas. But the authority on which Swazey relies bars the trial court from considering evidence outside the existing record. *See Class* at __, 138 S.Ct. at 804-805.

### C. There Is No Precedent That Supports a Remand to the Trial Court

**{¶ 72}** Until now, the exception to the guilty-plea waiver rule for challenges based on the constitutionality of the statute of conviction has been used only to allow an appellate court to review the constitutionality of a statute. In *Wilson*, this

court determined that the statute at issue did not violate the Constitution. *Id.* at 55-60. In *Menna*, the United States Supreme Court remanded the matter to the court of appeals for the constitutional determination. *Menna* at 63. I have not found—and the majority does not identify—a single reported appellate case in which the exception to the guilty-plea appellate-waiver rule has been used to reopen a proceeding in the trial court.[4]

{¶ 73} Neither the court of appeals nor the majority provide any guidance to the trial court for this novel procedure. The court of appeals did not vacate Swazey's guilty plea, so it is unclear the extent to which Swazey is bound by "his complete admission of [his] guilt," Crim.R. 11(B)(1), in the proceedings that are to be conducted below. And the scope of the trial court's review is unclear. Can Swazey introduce new evidence in support of the motion to dismiss or is he bound by the existing record? What if the trial court adopts Swazey's retroactivity argument? Does the state then need to put on additional evidence about Swazey's payments during the period set forth in Counts One and Three? If the state puts on additional evidence, do Swazey's guilty pleas prevent him from challenging the state's evidence? What if the trial court grants Swazey's motion only as to Count Two and determines it cannot decide the motion as to the other counts without hearing evidence—do the remaining counts go to trial or is Swazey bound by his guilty pleas?

{¶ 74} The majority provides no answers. If the majority is going to dramatically expand the guilty-plea waiver rule, it should at least provide better guidance to the trial court about what comes next.

---

4. Indeed, the best the majority can do is vaguely assert that Swazey presents the same "caliber of argument" as defendants in cases where an exception to the guilty-plea waiver rule has been found to apply. Majority opinion at ¶ 36.

### III. Conclusion

{¶ 75} The majority makes two mistakes. It errs in concluding that the trial court committed a procedural error in deferring consideration of Swazey's motion to dismiss until the close of trial. And it errs by allowing Swazey to raise this procedural error on appeal despite his guilty pleas. I respectfully dissent.

KENNEDY, C.J., and DETERS, J., concur in the foregoing opinion.

————————————

S. Forrest Thompson, Medina County Prosecuting Attorney, and Vincent Vigluicci, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Addison M. Spriggs, Assistant Public Defender, for appellee.

————————————